# United States District Court
## NORTHERN DISTRICT OF CALIFORNIA

E-filing

JOHN BROSNAN

v.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

CV 08    4049    MEJ

**TO: (Name and address of defendant)**

DEUTSCHE BANK NATIONAL TRUST COMPANY, 300 SOUTH GRAND AVE SUITE 3950, LOS ANGELES, CA 90071
CARRINGTON MORTGAGE SERVICES, C/O CT CORPORATION SYSTEM, 599 WEST PUTNAM AVE, GREENWICH, CT 06830
PAUL WINDERS, 525 FIRST STREET, BENICIA, CA 94510
DENNIS REIFERT, 185 WOOD COURT, VALLEJO, CA 94591
JOHN BOUZANE, 634 OAK COURT, SAN BERNADINO, CA 92410
ROBERT A. KRASNEY, 634 OAK COURT, SAN BERNADINO, CA 92410
EXPRESS EVICTIONS, 634 OAK COURT, SAN BERNADINO, CA 92410
APRICIA CORPORATION, C/O GENE P KILLIAN, 17952 IRVINE BLVD SUITE 218, TUSTIN, CA 92760
CURTIS LAW GROUP, 19700 FAIRCHILD, SUITE 380, IRVINE, CA 92612
PRIORITY POSTING AND PUBLISHING, C/O HELEN ALAILIMA, 17501 IRVINE BLVD SUITE 1, TUSTIN, CA, 92780

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

JOHN BROSNAN,

848 North Rainbow Blvd #1643
Las Vegas, NV 89107

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Richard W. Wieking

CLERK

Helen L. Almacen

(BY) DEPUTY CLERK

DATE  August 25, 2008

1  John Brosnan

2  848 North Rainbow Boulevard #1643

3  Las Vegas, NV

4  Telephone:  510.779.1006

5  Facsimile:   925.237.8300

6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

11 | John Brosnan                          | CASE NUMBER : C 08-04049 MEJ

12 | Plaintiff,                            | 1st AMENDED COMPLAINT FOR

13 |                                       | DAMAGES FOR VIOLATION OF 18 U.S.C. §
   | v.                                    | 2511 – ILLEGAL WIRETAPPING, THEFT -
14 |                                       | P.C. § 211, NEGLIGENCE, FORCIBLE
15 | DEUTSCHE BANK NATIONAL TRUST          | ENTRY - C.C.P. § 1159,  FORCIBLE
   | COMPANY, AS INDENTURE TRUSTEE         | DETAINER – C.C.P. § 1160,  BURGLARY –
16 | FOR NEW CENTURY HOME EQUITY           | P.C. § 459,  INVASION OF PRIVACY,
   | LOAN TRUST, CARRINGTON                | BREACH OF CONTRACT, DESTRUCTION
17 | MORTGAGE SERVICES LLC, PAUL           | OF PRIVATE PROPERTY, VIOLATION OF
   | WINDERS, DENNIS REIFERT, JOHN         | C.C.C. § 789.3 – ILLEGAL TERMINATION
18 | BOUZANE, PRIORITY POSTING AND         | OF TENANCY, ILLEGAL CONVERSION,
19 | PUBLISHING, APRICIA CORPORATION,      | PERSONAL INJURIES
   | CURTIS LAW GROUP, ROBERT A            |
20 | KRASNEY, EXPRESS EVICTIONS AND        |
21 | DOES 1 - 99                           | VERIFIED COMPLAINT
22 |                                       |
23 | Defendants.                           |
24 |                                       |

25

26

27  JOHN BROSNAN alleges as follows:

28

29  JURISDICTION, VENUE, AND PARTIES

30      1.     Pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1338, this Court has jurisdiction over the

31  subject matter of this action.  Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction

over the state law claim because this claim is related to, and forms part of the same case or controversy as, the federal question claims.

2.    Venue in this district is proper under 28 U.S.C. §1391.

3.    JOHN BROSNAN ("BROSNAN") conducts business in the jurisdiction of this Court.

4.    The unlawful actions of the defendants were committed in the State of California and in the judicial district of this Court.

5.    JOHN BROSNAN ("BROSNAN") is a natural person.

6.    BROSNAN is informed that DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE FOR NEW CENTURY HOME EQUITY LOAN TRUST is a business entity doing business in California ("DBN").

7.    BROSNAN is informed that CARRINGTON MORTGAGE SERVICES LLC ("CMS") is a California Limited Liability Company.

8.    BROSNAN is informed that Paul Winders ("WINDERS") is a California licensed real estate broker.

9.    BROSNAN is informed that Dennis Reifert ("REIFERT") is a California licensed contractor.

10.    BROSNAN is informed and believes that JOHN BOUZANE ("BOUZANE") is a California licensed attorney.

11.    BROSNAN is informed and believes that Robert A Krasney ("KRASNEY") is a California licensed attorney.

12.    BROSNAN is informed and believes that Express Evictions ("EXPRESS") is a California business engaged in doing evictions.

13.    BROSNAN is informed that PRIORITY POSTING AND PUBLISHING ("PRIORITY") is a California business.

14.    BROSNAN is informed that APRICIA CORPORATION ("APRICIA") is a California corporation.

15.    BROSNAN is informed that CURTIS LAW GROUP ("CURTIS") is a California business.

16.    BROSNAN is informed that EXPRESS EVICTIONS ("EXPRESS") is a California business.

17.    BROSNAN does not know the true names of the DOES listed above but will amend this complaint accordingly once their identities have been determined.

1

2

### FACTS

3    18.    On December 28, 2007, BROSNAN had possession of a property ("PROPERTY") that was

4    in foreclosure and had a scheduled foreclosure sale set for December 31, 2007.  There is a house

5    ("HOUSE") located on the PROPERTY.  Personal property of BROSNAN'S was in the HOUSE.

6    19.    The PROPERTY is located in Richmond, California.

7    20.    The PROPERTY had foreclosure sale scheduled for December 31, 2007, at 1:30 PM.

8    21.    Heather Woodhull owned the PROPERTY ("WOODHULL").

9    22.    BROSNAN was in the process of purchasing the PROPERTY from WOODHULL.

10    23.    BROSNAN had an approved loan to purchase the PROPERTY and an open escrow for the

11    purposes of purchasing the PROPERTY from WOODHULL.

12    24.    BROSNAN had secured a loan to purchase the PROPERTY from WOODHULL but

13    needed additional time beyond the December 31to close escrow on the purchase of the PROPERTY.

14    25.    In order to complete the closing of escrow on the PROPERTY, BROSNAN needed

15    additional time beyond the December 31, 2007, scheduled foreclosure sale.

16    26.    The loan servicing company handling the loan on the PROPERTY was CMS.

17    27.    On December 28, 2007, BROSNAN entered into an agreement ("AGREEMENT") with

18    CMS to postpone the scheduled foreclosure sale of the PROPERTY [Exhibit 1].

19    28.    The person at CMS who drafted the AGREEMENT was Alicia Jimenez ("JIMENEZ").

20    29.    On December 28, 2007, BROSNAN received the written AGREEMENT via fax from

21    CMS wherein CMS agreed to postpone the sale of the PROPERTY if BROSNAN signed the fax and

22    faxed it back to CMS as well as paying a postponement fee of $500. On Friday, December 28, 2007,

23    BROSNAN faxed the signed AGREEMENT to CMS. [Exhibit 2].

24    30.    On Friday, December 28, 2007, BROSNAN called to confirm with JIMENEZ the receipt

25    of the signed AGREEMENT; JIMENEZ confirmed receiving the signed AGREEMENT.

26    31.    The AGREEMENT also called for $500 to be received by CMS by December 31, 2007.

27    32.    On Sunday, December 30, 2007, BROSNAN paid the $500 called for in the

28    AGREEMENT by taking five hundred dollars in cash to Western Union and paying the money

29    directly to CMS via their Western Union Quick Collect Account [Exhibit 3].

30    33.    APRICIA was involved in the foreclosure sale of the PROPERTY.  On Monday, December

31    31, 2007, BROSNAN called APRICIA and informed them of the AGREEMENT.

34.   APRICIA informed BROSNAN that APRICIA could do nothing about the impending foreclosure sale without instructions from CMS.

35.   PRIORITY was involved in the foreclosure sale of the PROPERTY.  On Monday, December 31, 2007, BROSNAN called PRIORITY and informed them of the AGREEMENT.

36.   PRIORITY informed BROSNAN that PRIORITY could do nothing about the impending foreclosure sale without instructions from CMS.

37.   CURTIS was involved in the foreclosure sale of the PROPERTY.  On Monday, December 31, 2007, BROSNAN called CURTIS and informed them of the AGREEMENT.

38.   CURTIS informed BROSNAN that CURTIS could do nothing about the impending foreclosure sale without instructions from CMS.

39.   On December 31, 2007, at or about 10:30 AM, Alicia Jimenez ("JIMENEZ") from CMS called WOODHULL regarding the payment of $500.

40.   On December 31, 2007, at or about 10:30 AM, WOODHULL informed JIMENEZ that BROSNAN had paid $500 via the CMS Western Union Quick Collect Account and provided JIMENEZ with the Receipt Information.

41.   On December 31, 2007, at 1:30 PM, in violation of the AGREEMENT; CMS caused the PROPERTY to be sold at a foreclosure auction ("SALE").

42.   BROSNAN was not aware that the PROPERTY had been sold at auction.

43.   CMS, DBN, APRICIA, PRIORITY and CURTIS were involved with the sale of the PROPERTY in violation of the AGREEMENT.

44.   At some date unknown to BROSNAN, CMS hired WINDERS to handle the disposition of the PROPERTY.  WINDERS, is a licensed California Real Estate Broker.

45.   On or about January 16, 2008, WINDERS contacted BROSNAN and informed BROSNAN that the PROPERTY had been sold at auction.

46.   WINDERS demanded that BROSNAN give the keys to the PROPERTY to WINDERS and that BROSNAN immediately vacate the PROPERTY.

47.   BROSNAN did not believe that the PROPERTY had been sold at auction due to the AGREEMENT in place postponing the sale of the PROPERTY.

48.   When a trustee sells a PROPERTY at a foreclosure sale the trustee generates what's known as a Trustee's Deed Upon Sale ("TDS").

49.   The TDS is recorded at the county recorders office to publicly publish the change of

1    ownership of the PROPERTY.

2    50.    No TDS regarding the SALE was recorded as of January 16, 2008.

3    51.    BROSNAN informed WINDERS that BROSNAN would speak to WINDERS about the

4    PROPERTY once WINDERS provided BROSNAN with the TDS.

5    52.    BROSNAN believed that WINDERS was attempting to perpetrate a scam upon

6    BROSNAN, which is why BROSNAN asked that WINDERS provide BROSNAN with the TDS.

7    Since BROSNAN believed that the PROPERTY had not been sold due to the AGREEMENT

8    BROSNAN felt that WINDERS would not be able to provide a TDS and WINDERS would leave

9    BROSNAN alone.

10   53.    On or about January 16, 2008, BROSNAN contacted CMS to speak to JIMENEZ about the

11   PROPERTY and WINDERS.

12   54.    BROSNAN was unable to reach JIMENEZ and left a message for JIMENEZ to call

13   BROSNAN regarding the PROPERTY.   JIMENEZ did not return BROSNAN'S call.

14   55.    BROSNAN called JIMENEZ several times in order to speak to her regarding the

15   PROPERTY; JIMENEZ did not return any of BROSNAN'S calls.

16   56.    JIMENEZ refused to return BROSNAN'S calls due to the fact that CMS had violated the

17   terms of the AGREEMENT.

18   57.    CMS wanted BROSNAN forced out of the PROPERTY.

19   58.    CMS wanted BROSNAN out of the PROPERTY so that CMS could sell the PROPERTY

20   on the open real estate market and make a profit.

21   59.    After several failed attempts to speak to JIMENEZ, BROSNAN attempted to speak to

22   another person at CMS regarding the PROPERTY.   Each time BROSNAN attempted to speak to

23   another person at CMS regarding the PROPERTY, BROSNAN was told that he would have to speak

24   to JIMENEZ because JIMENEZ was handling the file related to the PROPERTY.

25   60.    During the time BROSNAN was trying to contact JIMENEZ, WINDERS continued to

26   contact BROSNAN and demand that BROSNAN vacate the PROPERTY.

27   61.    WINDERS informed BROSNAN that BROSNAN would be arrested for trespassing if

28   BROSNAN did not vacate the property.

29   62.    BROSNAN continued to check with the recorders office and found no TDS for the SALE

30   of the PROPERTY and therefore felt that WINDERS was attempting some kind of scam.

31   63.    Toward the end of the month of January 2008, BROSNAN discovered that the

1   PROPERTY had been in fact been sold in violation of the AGREEMENT.

2       64.    BROSNAN contacted his loan broker, Robert Jacobsen, ("JACOBSEN") and informed him

3   of what had happened and asked JACOBSEN what could be done to keep the loan in place.

4       65.    JACOBSEN informed BROSNAN that the lender understood the issues about the

5   AGREEMENT being violated but that they could not hold the loan while BROSNAN dealt with the

6   illegal SALE of the PROPERTY.

7       66.    BROSNAN lost his loan as a result of the sale of the PROPERTY.

8       67.    On or about February 2, 2008, WINDERS again contacted BROSNAN demanding that

9   BROSNAN immediately vacate the PROPERTY and give WINDERS the keys to the PROPERTY.

10  BROSNAN again told WINDERS to provide BROSNAN with a TDS and then BROSNAN would

11  speak with WINDERS.

12      68.    As of August 20, 2008, BROSNAN has not been provided with a TDS for the December

13  31, 2007, foreclosure sale of the PROPERTY.

14      69.    As of March 1, 2008, No Unlawful Detainer action had been filed on the PROPERTY.

15      70.    As of March 1, 2008, no court order allowing entry to the PROPERTY had been issued.

16      71.    WINDERS did not have a court order allowing him to enter the PROPERTY.

17      72.    REIFERT did not have a court order allowing him to enter the PROPERTY.

18      73.    CMS did not have a court order allowing CMS entry to the PROPERTY.

19      74.    DBN did not have a court order allowing DBN entry to the PROPERTY

20      75.    BOUZANE did not have a court order allowing him entry to the PROPERTY.

21      76.    APRECIA did not have a court order allowing them entry to the PROPERTY.

22      77.    PRIORITY did not have a court order allowing them entry to the PROPERTY.

23      78.    CURTIS did not have a court order allowing them entry to the PROPERTY.

24      79.    CMS hired BOUZANE to evict BROSNAN from the property.

25      80.    In his statement to the Richmond Police, WINDERS refers to a company called Fast

26  Evictions, which was handling the eviction of BROSNAN from the PROPERTY.  The actual name

27  of the company handling the eviction is Express Evictions.  Express Evictions operates a website

28  with an address of http://fastevictions.com.

29      81.    BOUZANE and KRASNEY are lawyers who work at a company called Express Evictions

30  located in San Bernardino in California, the company WINDERS referred to as Fast Evictions.

31      82.    On February 5, 2008, WINDERS called BROSNAN and asked BROSNAN if BROSNAN

would voluntarily vacate the property and turn over the keys to the PROPERTY.

83.    On February 5, 2008, BROSNAN told WINDERS that BROSNAN would not vacate the PROPERTY or turn over the keys to the PROPERTY.

84.    On February 5, 2008, WINDERS spoke with BOUZANE about cutting the locks on the property and entering the PROPERTY to change the locks.

85.    On February 5, 2008, BOUZANE told WINDERS to cut the lock on the gate to the PROPERTY and enter the PROPERTY and change the locks on the HOUSE if WINDERS thought the PROPERTY appeared to be abandoned and that no one was in the residence.

86.    On February 5, 2008, KRASNEY told WINDERS to cut the lock on the gate to the PROPERTY and enter the PROPERTY and change the locks on the HOUSE if WINDERS thought the PROPERTY appeared to be abandoned and that no one was in the residence.

87.    On February 5, 2008, someone on the staff at EXPRESS told WINDERS to cut the lock on the gate to the PROPERTY and enter the PROPERTY and change the locks on the HOUSE if WINDERS thought the PROPERTY appeared to be abandoned and that no one was in the residence.

88.    WINDERS hired a contractor, REIFERT, to change the locks to the PROPERTY. WINDERS arranged to meet with REIFERT at the PROPERTY.

89.    On February 5, 2008, REIFERT arrived at the PROPERTY and knocked on the front door. No one answered the door but according to the statement REIFERT provided to the Richmond Police department he heard someone inside the HOUSE at the PROPERTY [Exhibit 4] so he called the police to do a civil standby while REIFERT changed the locks on the PROPERTY.

90.    While waiting for an officer to arrive, REIFERT cut off a padlock on a gate at the PROPERTY.  Said padlock secured a gate which provided access to the rear of the PROPERTY.

91.    Officer Anderson arrived at the PROPERTY and met with REIFERT.

92.    Officer Anderson and REIFERT entered the rear of the PROPERTY via the gate, which had held the lock, which REIFERT has previously cut off.  Officer Anderson and REIFERT did a security check of the PROPERTY and found that all the doors and windows were locked and secure except for a door leading to a garage located at the rear of the PROPERTY; the garage with the unlocked door is not attached to the HOUSE located at the PROPERTY.

93.    WINDERS arrived and met with REIFERT and Officer Anderson.  Officer Anderson explained to WINDERS and REIFERT that without a court order they could not enter the PROPERTY and nor could they change the locks.  Officer Anderson ("ANDERSON") then left.

94.    On February 5, 2008, after Officer Anderson left, WINDERS and REIFERT illegally entered into HOUSE on the PROPERTY.

95.    On February 5, 2008, REIFERT changed the locks of the HOUSE on the PROPERTY.

96.    WINDERS did not replace the lock, which had been cut off the gate to the PROPERTY.

97.    REIFERT did not replace the lock, which had been cut off the gate to the PROPERTY.

98.    No TDS was recorded as of February 5, 2008.

99.    On or about February 5, 2008, WINDERS illegally removed personal property belonging to BROSNAN from the PROPERTY.

100.    On February 10, 2008, BROSNAN returned to the PROPERTY from a business trip to discover that a rear door to the PROPERTY was open.

101.    BROSNAN entered the HOUSE and discovered that personal property of his was missing.

102.    BROSNAN discovered that WINDERS had left several notices on the front door of the PROPERTY stating that WINDERS had entered the PROPERTY and changed the locks to secure the PROPERTY [Exhibit 5].  One of notices informed BROSNAN to call WINDERS.

103.    BROSNAN called WINDERS to have BROSNAN'S personal property returned.

104.    WINDERS told BROSNAN that if BROSNAN immediately vacated the PROPERTY and gave WINDERS the keys to the PROPERTY that WINDERS would consider returning BROSNAN'S property, BROSNAN hung up the phone and called the Richmond Police.

105.    Officer Purcell of the Richmond Police came to the PROPERTY.  BROSNAN informed Officer Purcell what WINDERS had done respective to breaking into the PROPERTY as well as taking personal property from the PROPERTY.  BROSNAN further informed Officer Purcell about the phone call with WINDERS.

106.    Officer Purcell called WINDERS and left a message for WINDERS.

107.    WINDERS called Officer Purcell and informed him that what WINDERS had done was at the direction of the CMS and the attorneys for CMS.

108.    CMS and the attorneys directed WINDERS to break into the PROPERTY, change the locks and take property belonging to BROSNAN.

109.    BROSNAN was told to speak to Officer Vegas of the Richmond Police regarding the incident.  When BROSNAN spoke with Officer Vegas and told Officer Vegas what had happened Officer Vegas informed BROSNAN that another officer would be contacting BROSNAN to take a report regarding the break in.

110.  CMS through its agent BOUZANE told WINDERS to cut the locks on the PROPERTY.

111.  CMS through its agent BOUZANE told WINDERS to enter the PROPERTY.

112.  CMS through its agent BOUZANE told WINDERS to change the locks on the door.

113.  CMS through its agent BOUZANE told WINDERS to take BROSNAN'S personal property and offer to consider returning it if BROSNAN moved out of the PROPERTY.

114.  BROSNAN has demanded that CMS return BROSNAN'S personal property.

115.  CMS has refused to return BROSNAN'S personal property.

116.  BROSNAN has demanded that WINDERS return BROSNAN'S personal property.

117.  WINDERS has refused to return BROSNAN'S personal property.

118.  On or about February 12, 2008, BROSNAN spoke with Officer Joe Anderson ("ANDERSON") of the Richmond Police.  ANDERSON informed BROSNAN that ANDERSON had met with WINDERS at the PROPERTY because WINDERS wanted ANDERSON to stand by while he entered the PROPERTY; ANDERSON informed WINDERS that without a court order WINDERS could not enter the PROPERTY; ANDERSON observed that the back door to the PROPERTY was locked after doing a security check of the PROPERTY; WINDERS informed ANDERSON that WINDERS was going to enter the house; ANDERSON informed WINDERS and REIFERT that for WINDERS or REIFERT to enter the house a court order was needed.

119.  After ANDERSON left WINDERS and REIFERT broke into the house on the PROPERTY.

120.  After breaking into the PROPERTY, WINDERS did not replace the lock he cut off the front gate.

121.  After breaking into the PROPERTY, REIFERT did not replace the lock he cut off the front gate.

122.  On or about February 13, 2008, Officer Bill Roderick ("RODERICK") of the Richmond Police contacted BROSNAN regarding the break in, burglary and taking a report regarding what had happened.

123.  RODERICK contacted WINDERS and asked that WINDERS provide a statement as to what happened.  In WINDERS statement, WINDERS stated that the back door to the PROPERTY was open when he went there with ANDERSON.

124.  WINDERS admitted to RODERICK that WINDERS' failure to replace the padlock on the side gate to the PROPERTY was an oversight.

125.  WINDERS explained to RODERICK that due to WINDERS' busy schedule that WINDERS and REIFERT had forgotten about the padlock on the side gate; which is why the padlock had not been replaced.

126.  RODERICK informed BROSNAN that WINDERS had told RODERICK that WINDERS had recorded BROSNAN'S call to WINDERS.  Said recording was not made with BROSNAN'S permission.  Said recordation was a violation of federal law.

127.  BROSNAN was not informed that WINDERS was recording the call BROSNAN made to WINDERS.

128.  CMS directed WINDERS to illegally record BROSNAN'S call to WINDERS.

129.  ANDERSON stated to Officer Roderick that the back door to the HOUSE was locked.

130.  Officer Joe Anderson of the Richmond Police is being truthful about the back door.

131.  WINDERS is lying about the back door.

132.  WINDERS is claiming that ANDERSON is lying.

133.  BROSNAN believes that ANDERSON is telling the truth.

134.  BROSNAN believes that WINDERS is lying.

135.  BROSNAN has not been provided with any legal documentation giving WINDERS, DBN, CMS or REIFERT the right to enter the property.

136.  BROSNAN has not been provided with any legal documentation giving DBN, WINDERS, CMS or REIFERT the right to cut the lock off the gate.

137.  BROSNAN has not been provided with any legal documentation giving DBN, WINDERS, CMS or REIFERT the right to break into the house.

138.  BROSNAN has not been provided with any legal documentation giving DBN, WINDERS, CMS or REIFERT the right to take BROSNAN'S property.

139.  BROSNAN has not been provided with any legal documentation giving DBN, WINDERS, CMS or REIFERT the right to refuse to return BROSNAN'S property.

140.  DBN, WINDERS, CMS and REIFERT are illegally keeping BROSNAN'S property.

141.  CMS is aware that BROSNAN lost his loan on the PROPERTY due to the breach of the AGREEMENT by CMS.

142.  CMS and DBN refuse to replace the loan BROSNAN lost.

143.  BROSNAN has been financially harmed by the illegal taking and withholding of his personal property by DBN, CMS and WINDERS.

144.  DBN and CMS conspired to violate the AGREEMENT in order to steal the PROPERTY from BROSNAN.

145.  WINDERS, in his statement to the Richmond Police [Exhibit 7] said that the Fast Eviction and its attorneys' and other staff told him that he could enter the PROPERTY and change the locks if he thought the PROPERTY was abandoned.  WINDERS own contractor, REIFERT, called the Richmond Police because he stated that he thought he'd heard someone inside the house when he knocked on the front door when he arrived at the PROPERTY to change the locks.  Based on the statement of REIFERT [Exhibit 4], which REIFERT himself provided to the Richmond Police regarding hearing someone inside the house, WINDERS and REIFERT should have left the PROPERTY when no one answered the front door.  WINDERS and REIFERT did not have a Court Order giving them access to the PROPERTY. WINDERS and REIFERT did not have a Court Order giving them the right to change the locks on the PROPERTY.  WINDERS and REIFERT believing that someone was in the house felt they had the right to terrorize that person by cutting the lock off a gate and illegally entering the PROPERTY, take property belonging to BROSNAN and change locks to the PROPERTY.

## FIRST CAUSE OF ACTION
## PERSONAL INJURY
## FEDERAL CLAIM
## VIOLATION OF 18 U.S.C. § 2511 – ILLEGAL WIRETAPPING
## DBN, WINDERS & CMS

146.  Plaintiff refers to the allegations of the preceding paragraphs of this complaint, and incorporates the same herein by this reference as though set forth in full.

147.  Recordation of a phone call without the consent of both parties to the phone is a violation of 18 U.S.C. § 2511.

**148.**  WINDERS, DBN and CMS illegally recorded BROSNAN'S phone call to WINDERS.

**149.**  DBN, CMS directed WINDERS to illegally record BROSNAN.

**150.**  BROSNAN'S rights were violated when WINDERS illegally recorded BROSNAN.

**151.**  BROSNAN has the right to be informed when a telephone conversation is being recorded yet defendants felt that it was ok to violate the law and illegally record BROSNAN.

1    **152.** BROSNAN does not know what purpose the illegally recorded phone call will be used for.

2    Defendants in this action will use the illegal recording to BROSNAN for illegal purposes.

3

4                        **SECOND CAUSE OF ACTION**

5                          **PERSONAL INJURY**

6                         **THEFT – P.C. § 484**

7                    **DBN, WINDERS, REIFERT & CMS**

8

9    153. Plaintiff refers to the allegations of the preceding paragraphs of this complaint, and

10   incorporates the same herein by this reference as though set forth in full.

11   154. WINDERS, REIFERT and CMS have taken property belonging to BROSNAN and are

12   refusing to return said property.

13   **155.** California Penal Code § 484 states:

14               **484.  (a) Every person who shall feloniously steal, take, carry, lead, or drive**

15               **away the personal property of another, or who shall fraudulently appropriate**

16               **property which has been entrusted to him or her, or who shall knowingly and**

17               **designedly, by any false or fraudulent representation or pretense, defraud any**

18               **other person of money, labor or real or personal property, or who causes or**

19               **procures others to report falsely of his or her wealth or mercantile character and**

20               **by thus imposing upon any person, obtains credit and thereby fraudulently gets**

21               **or obtains possession of money, or property or obtains the labor or service of**

22               **another, is guilty of theft**

23

24   **156.** WINDERS, REIFERT and CMS have taken BROSNAN'S property and refused to return it

25   in violation of California Penal Code § 484.

26   **157.** CMS directed WINDERS and REIFERT to take BROSNAN'S property.

27   **158.** WINDERS, in his statement to the Richmond Police [Exhibit 7] said that the Fast Eviction

28   and its attorneys' and other staff told him that he could enter the PROPERTY and change the locks if

29   he thought the PROPERTY was abandoned.  WINDERS own contractor, REIFERT, called the

30   Richmond Police because he stated that he thought he'd heard someone inside the house when he

31   knocked on the front door when he arrived at the PROPERTY to change the locks.  Based on the

statement of REIFERT [Exhibit 4], which REIFERT himself provided to the Richmond Police regarding hearing someone inside the house, WINDERS and REIFERT should have left the PROPERTY when no one answered the front door.  WINDERS and REIFERT did not have a Court Order giving them access to the PROPERTY. WINDERS and REIFERT did not have a Court Order giving them the right to change the locks on the PROPERTY.  WINDERS and REIFERT believing that someone was in the house felt they had the right to terrorize that person by cutting the lock off a gate and illegally entering the PROPERTY, take property belonging to BROSNAN and change locks to the PROPERTY.

## THIRD CAUSE OF ACTION
## PERSONAL INJURY
## CONSPIRACY TO COMMIT THEFT
## BOUZANE, KRASNEY, DBN, WINDERS, REIFERT & CMS

159.  Plaintiff refers to the allegations of the preceding paragraphs of this complaint, and incorporates the same herein by this reference as though set forth in full.

160.  California law defines a conspiracy is an agreement between two or more persons to commit a wrongful act

**161.**  California Penal Code § 484 states:

> **484.  (a) Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft**

**162.**  WINDERS, REIFERT and CMS have taken BROSNAN'S property and refused to return it in violation of California Penal Code § 484.

---

**163.** CMS directed WINDERS and REIFERT to take BROSNAN'S property.

164. DBN, CMS, WINDERS and REIFERT took BROSNAN'S property and refuse to return said property.

165. No Court had issued an order allowing entry to the property on February 5, 2008.

166. WINDERS stated to the Richmond Police that he entered the property at the direction of the attorneys involved, those attorneys are BOUZANE and KRASNEY.

167. WINDERS, in his statement to the Richmond Police [Exhibit 7] said that the Fast Eviction and its attorneys' and other staff told him that he could enter the PROPERTY and change the locks if he thought the PROPERTY was abandoned.  WINDERS own contractor, REIFERT, called the Richmond Police because he stated that he thought he'd heard someone inside the house when he knocked on the front door when he arrived at the PROPERTY to change the locks.  Based on the statement of REIFERT [Exhibit 4], which REIFERT himself provided to the Richmond Police regarding hearing someone inside the house, WINDERS and REIFERT should have left the PROPERTY when no one answered the front door.  WINDERS and REIFERT did not have a Court Order giving them access to the PROPERTY. WINDERS and REIFERT did not have a Court Order giving them the right to change the locks on the PROPERTY.  WINDERS and REIFERT believing that someone was in the house felt they had the right to terrorize that person by cutting the lock off a gate and illegally entering the PROPERTY, take property belonging to BROSNAN and change locks to the PROPERTY.

**FOURTH CAUSE OF ACTION**

**PERSONAL INJURY**

**FORCIBLE ENTRY – C.C.P. § 1159**

**DBN, CMS, WINDERS, REIFERT, CURTIS, KRASNEY, EXPRESS EVICTIONS &**

**BOUZANE**

168. Plaintiff refers to the allegations of the preceding paragraphs of this complaint, and incorporates the same herein by this reference as though set forth in full.

169. California Code of Civil Procedure section 1159 states:

**1159.  Every person is guilty of a forcible entry who either:   1. By breaking open**

**doors, windows, or other parts of a house, or by any kind of violence or circumstance of terror enters upon or into any real property**

170. DBN, CMS, WINDERS, REIFERT, CURTIS KRASNEY, EXPRESS EVICTIONS & BOUZANE conspired to break into the PROPERTY.

**171.** WINDERS & REIFERT broke into the PROPERTY at the direction of DBN, CMS, CURTIS, KRASNEY, EXPRESS EVICTIONS & BOUZANE.

**172.** WINDERS & REIFERT were informed by ANDERSON that they could not enter the house without a court order.

**173.** WINDERS & REIFERT elected to disregard what ANDERSON told them and enter the PROPERTY anyway and change the locks.

**174.** WINDERS, in his statement to the Richmond Police [Exhibit 7] said that the Fast Eviction and its attorneys' and other staff told him that he could enter the PROPERTY and change the locks if he thought the PROPERTY was abandoned. WINDERS own contractor, REIFERT, called the Richmond Police because he stated that he thought he'd heard someone inside the house when he knocked on the front door when he arrived at the PROPERTY to change the locks. Based on the statement of REIFERT [Exhibit 4], which REIFERT himself provided to the Richmond Police regarding hearing someone inside the house, WINDERS and REIFERT should have left the PROPERTY when no one answered the front door. WINDERS and REIFERT did not have a Court Order giving them access to the PROPERTY. WINDERS and REIFERT did not have a Court Order giving them the right to change the locks on the PROPERTY. WINDERS and REIFERT believing that someone was in the house felt they had the right to terrorize that person by cutting the lock off a gate and illegally entering the PROPERTY, take property belonging to BROSNAN and change locks to the PROPERTY.

//
//
//
//
//
//
//

**FIFTH CAUSE OF ACTION**

**PERSONAL INJURY**

**FORCIBLE DETAINER – C.C.P.§ 1160**

**DBN, CMS, WINDERS, REIFERT, KRASNEY, EXPRESS EVICTIONS CURTIS &**

**BOUZANE**

175.  Plaintiff refers to the allegations of the preceding paragraphs of this complaint, and incorporates the same herein by this reference as though set forth in full.

176.  California Code of Civil Procedure section 1160 states:

> **Every person is guilty of a forcible detainer who either:   1. By force, or by menaces and threats of violence, unlawfully holds and keeps the possession of any real property, whether the same was acquired peaceably or otherwise; or,   2. Who, in the night-time, or during the absence of the occupant of any lands, unlawfully enters upon real property, and who, after demand made for the surrender thereof, for the period of five days, refuses to surrender the same to such former occupant.   The occupant of real property, within the meaning of this subdivision, is one who, within five days preceding such unlawful entry, was in the peaceable and undisturbed possession of such lands**

177.  DBN, CMS, CURTIS, KRASNEY, EXPRESS EVICTIONS & BOUZANE conspired to unlawfully enter into the PROPERTY and take property of BROSNAN.

178.  DBN, CMS, CURTIS, KRASNEY, EXPRESS EVICTIONS & BOUZANE ordered WINDERS & REIFERT to take BROSNAN'S property and not return it to BROSNAN.

179.  BROSNAN has demanded the return of his property from REIFERT, WINDERS, DBN, CMS, CURTIS, KRASNEY, EXPRESS EVICTIONS & BOUZANE.

180.  BROSNAN demanded the return of his property on February 10, 2008.

181.  REIFERT, WINDERS, DBN, CMS, CURTIS, KRASNEY, EXPRESS EVICTIONS & BOUZANE have refused to return BROSNAN'S property.

182.  BROSNAN has not been provided a copy of any order allowing entry to the property or providing any defendant the right to take property of BROSNAN or to change the locks at the PROPERTY yet that is exactly what defendants did.

183.  Defendants have refused to return BROSNAN to the condition he was in prior to the illegal entry of the PROPERTY.

184.  WINDERS has refused to provide his insurance information to BROSNAN.

185.  WINDERS, in his statement to the Richmond Police [Exhibit 7] said that the Fast Eviction and its attorneys' and other staff told him that he could enter the PROPERTY and change the locks if he thought the PROPERTY was abandoned.  WINDERS own contractor, REIFERT, called the Richmond Police because he stated that he thought he'd heard someone inside the house when he knocked on the front door when he arrived at the PROPERTY to change the locks.  Based on the statement of REIFERT [Exhibit 4], which REIFERT himself provided to the Richmond Police regarding hearing someone inside the house, WINDERS and REIFERT should have left the PROPERTY when no one answered the front door.  WINDERS and REIFERT did not have a Court Order giving them access to the PROPERTY. WINDERS and REIFERT did not have a Court Order giving them the right to change the locks on the PROPERTY.  WINDERS and REIFERT believing that someone was in the house felt they had the right to terrorize that person by cutting the lock off a gate and illegally entering the PROPERTY, take property belonging to BROSNAN and change locks to the PROPERTY.

**SIXTH CAUSE OF ACTION**

**PERSONAL INJURY**

**BURGLARY – P.C. § 459**

**DBN, CMS, WINDERS, REIFERT, KRASNEY, EXPRESS EVICTIONS CURTIS & BOUZANE**

186.  Plaintiff refers to the allegations of the preceding paragraphs of this complaint, and incorporates the same herein by this reference as though set forth in full.

187.  California Penal Code section 459 states:

> **459.  Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, as defined in Section 21 of the Harbors and Navigation Code, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, railroad car, locked or sealed cargo container, whether or not mounted on a**

**vehicle, trailer coach, as defined in Section 635 of the Vehicle Code, any house car, as defined in Section 362 of the Vehicle Code, inhabited camper, as defined in Section 243 of the Vehicle Code, vehicle as defined by the Vehicle Code, when the doors are locked, aircraft as defined by Section 21012 of the Public Utilities Code, or mine or any underground portion thereof, with intent to commit grand or petit larceny or any felony is guilty of burglary.  As used in this chapter, "inhabited" means currently being used for dwelling purposes, whether occupied or not.  A house, trailer, vessel designed for habitation, or portion of a building is currently being used for dwelling purposes if, at the time of the burglary, it was not occupied solely because a natural or other disaster caused the occupants to leave the premises.**

188.  REIFERT, WINDERS, DBN, CMS, CURTIS, KRASNEY, EXPRESS EVICTIONS & BOUZANE conspired to commit burglary.

189.  WINDERS & REIFERT carried out the burglary at the direction of REIFERT, WINDERS, DBN, CMS, CURTIS, KRASNEY, EXPRESS EVICTIONS & BOUZANE.

190.  Said burglary was committed with the intent to deprive BROSNAN of his personal property to the detriment of BROSNAN as well as to terrorize BROSNAN.

191.  WINDERS, in his statement to the Richmond Police [Exhibit 7] said that the Fast Eviction and its attorneys' and other staff told him that he could enter the PROPERTY and change the locks if he thought the PROPERTY was abandoned.  WINDERS own contractor, REIFERT, called the Richmond Police because he stated that he thought he'd heard someone inside the house when he knocked on the front door when he arrived at the PROPERTY to change the locks.  Based on the statement of REIFERT [Exhibit 4], which REIFERT himself provided to the Richmond Police regarding hearing someone inside the house, WINDERS and REIFERT should have left the PROPERTY when no one answered the front door.  WINDERS and REIFERT did not have a Court Order giving them access to the PROPERTY. WINDERS and REIFERT did not have a Court Order giving them the right to change the locks on the PROPERTY.  WINDERS and REIFERT believing that someone was in the house felt they had the right to terrorize that person by cutting the lock off a gate and illegally entering the PROPERTY, take property belonging to BROSNAN and change locks to the PROPERTY.

1

## SEVENTH CAUSE OF ACTION

2

## PERSONAL INJURY

3

## INVASION OF PRIVACY

4

## DBN, CMS, WINDERS, REIFERT, KRASNEY, EXPRESS EVICTIONS CURTIS &

5

## BOUZANE

6

7    192.  Plaintiff refers to the allegations of the preceding paragraphs of this complaint, and

8    incorporates the same herein by this reference as though set forth in full.

9    193.  CMS, DBN, WINDERS, REIFERT, CURTIS & BOUZANE conspired to invade the

10    privacy of BROSNAN in order to terrorize BROSNAN out of the PROPERTY.

11    194.  WINDERS entered the PROPERTY and went through BROSNAN'S personal belongings

12    and photographed them.

13    195.  WINDERS entered the PROPERTY and photographed BROSNAN'S personal property at

14    the direction of DBN, CMS, CURTIS, KRASNEY and BOUZANE.

15    196.  WINDERS, in his statement to the Richmond Police [Exhibit 7] said that the Fast Eviction

16    and its attorneys' and other staff told him that he could enter the PROPERTY and change the locks if

17    he thought the PROPERTY was abandoned.  WINDERS own contractor, REIFERT, called the

18    Richmond Police because he stated that he thought he'd heard someone inside the house when he

19    knocked on the front door when he arrived at the PROPERTY to change the locks.  Based on the

20    statement of REIFERT [Exhibit 4], which REIFERT himself provided to the Richmond Police

21    regarding hearing someone inside the house, WINDERS and REIFERT should have left the

22    PROPERTY when no one answered the front door.  WINDERS and REIFERT did not have a Court

23    Order giving them access to the PROPERTY. WINDERS and REIFERT did not have a Court Order

24    giving them the right to change the locks on the PROPERTY.  WINDERS and REIFERT believing

25    that someone was in the house felt they had the right to terrorize that person by cutting the lock off a

26    gate and illegally entering the PROPERTY, take property belonging to BROSNAN and change locks

27    to the PROPERTY.

28    //

29    //

30    //

31    //

1
2
3
4
5

## EIGHTH CAUSE OF ACTION
## PERSONAL INJURY
## WRONGFUL FORECLOSURE
### DBN, CMS, CURTIS, PRIORITY, APRICIA

6   197.  Plaintiff refers to the allegations of the preceding paragraphs of this complaint, and
7   incorporates the same herein by this reference as though set forth in full.

8   198.  DBN, CMS, PRIORITY, APRICIA & PRIORITY knew that the sale of the PROPERTY
9   should not have happened yet still conducted the sale.

10   199.  CMS knew that BROSNAN'S loan would be lost if the sale was conducted.

11   200.  BROSNAN lost his loan as a result of the sale of the PROPERTY.

12   201.  DBN, CMS, PRIORITY, APRICIA & PRIORITY conducted the sale of the PROPERTY
13   in order to deprive BROSNAN of the PROPERTY.

14   202.  A direct result of the wrongful foreclosure of the PROPERTY is that the loan BROSNAN
15   had secured to purchase the property was lost.

16   203.  CMS knew that violating the AGREEMENT would cause the PROPERTY to be sold and
17   that BROSNAN would lose the loan he's arranged.

18

## NINTH CAUSE OF ACTION
## BREACH OF CONTRACT
### DBN, CMS

19
20
21
22

23   204.  Plaintiff refers to the allegations of the preceding paragraphs of this complaint, and
24   incorporates the same herein by this reference as though set forth in full.

25   205.  CMS and DBN violated the AGREEMENT which required CMS to postpone the sale of
26   the PROPERTY.

27   //
28   //
29   //
30   //
31   //

**TENTH CAUSE OF ACTION**

**PROPERTY DAMAGE**

**CONSPIRACY TO DESTROY PRIVATE PROPERTY**

**DBN, CMS, WINDERS, REIFERT, KRASNEY, EXPRESS EVICTIONS CURTIS &**

**BOUZANE**

206.  Plaintiff refers to the allegations of the preceding paragraphs of this complaint, and incorporates the same herein by this reference as though set forth in full.

207.  DBN, CMS, KRASNEY, EXPRESS EVICTIONS, WINDERS, REIFERT, CURTIS & BOUZANE conspired to destroy BROSNAN'S personal property when they chose to cut the lock off BROSNAN'S gate.

208.  WINDERS & REIFERT cut the lock on BROSNAN'S gate at the direction of CMS, CURTIS & BOUZANE.

209.  CMS, WINDERS, REIFERT, CURTIS & BOUZANE conspired to refuse to replace BROSNAN'S gate lock.

210.  WINDERS, in his statement to the Richmond Police [Exhibit 7] said that the Fast Eviction and its attorneys' and other staff told him that he could enter the PROPERTY and change the locks if he thought the PROPERTY was abandoned.  WINDERS own contractor, REIFERT, called the Richmond Police because he stated that he thought he'd heard someone inside the house when he knocked on the front door when he arrived at the PROPERTY to change the locks.  Based on the statement of REIFERT [Exhibit 4], which REIFERT himself provided to the Richmond Police regarding hearing someone inside the house, WINDERS and REIFERT should have left the PROPERTY when no one answered the front door.  WINDERS and REIFERT did not have a Court Order giving them access to the PROPERTY. WINDERS and REIFERT did not have a Court Order giving them the right to change the locks on the PROPERTY.  WINDERS and REIFERT believing that someone was in the house felt they had the right to terrorize that person by cutting the lock off a gate and illegally entering the PROPERTY, take property belonging to BROSNAN and change locks to the PROPERTY.

//

//

//

## ELEVENTH CAUSE OF ACTION
## PERSONAL INJURY
## ILLEGAL TERMINATION OF OCCUPANCY
## ALL DEFENDANTS

211.  Plaintiff refers to the allegations of the preceding paragraphs of this complaint, and incorporates the same herein by this reference as though set forth in full

212.  California Civil Code § 789.3 states:

789.3.  (a) A landlord shall not with intent to terminate the occupancy under any lease or other tenancy or estate at will, however created, of property used by a tenant as his residence willfully cause, directly or indirectly, the interruption or termination of any utility service furnished the tenant, including, but not limited to,

water, heat, light, electricity, gas, telephone, elevator, or refrigeration, whether or not the utility service is under the control of the landlord.

(b) In addition, a landlord shall not, with intent to terminate the occupancy under any lease or other tenancy or estate at will, however created, of property used by a tenant as his or her residence, willfully:

(1) Prevent the tenant from gaining reasonable access to the property by changing the locks or using a bootlock or by any other similar method or device;

(2) Remove outside doors or windows; or

(3) Remove from the premises the tenant's personal property, the furnishings, or any other items without the prior written consent of the tenant, except when done pursuant to the procedure set forth in Chapter 5 (commencing with Section 1980) of Title 5 of Part 4 of

Division 3.

Nothing in this subdivision shall be construed to prevent the lawful eviction of a tenant by appropriate legal authorities, nor shall anything in this subdivision apply to occupancies defined by subdivision (b) of Section 1940.

(c) Any landlord who violates this section shall be liable to the tenant in a civil action for all of the following:

(1) Actual damages of the tenant.

(2) An amount not to exceed one hundred dollars ($100) for each day or part thereof the landlord remains in violation of this section.  In determining the amount of such award, the court shall consider proof of such matters as justice may require; however, in no event shall less than two hundred fifty dollars ($250) be awarded for each separate cause of action.  Subsequent or repeated violations, which are not committed contemporaneously with the initial violation, shall be treated as separate causes of action and shall be subject to a separate award of damages.

(d) In any action under subdivision (c) the court shall award reasonable attorney's fees to the prevailing party.  In any such action the tenant may seek appropriate injunctive relief to prevent continuing or further violation of the provisions of this section during the pendency of the action.  The remedy provided by this section is not exclusive and shall not preclude the tenant from pursuing any other remedy which the tenant may have under any other provision of law.

213.  All defendants acted in concert to lie to the Richmond Police Department and it's officers in order to illegally gain access to the PROPERTY and the HOUSE.

214.  Defendants illegally entered the HOUSE and changed locks to the HOUSE.

215.  Defendants admit to illegally changing locks on the HOUSE.

216.  Defendants have taken BROSNAN'S personal property.

217.  Defendants refuse to return BROSNAN'S personal property.

218.  BROSNAN has been injured by Defendant illegal activity.

219.  WINDERS, in his statement to the Richmond Police [Exhibit 7] said that the Fast Eviction and its attorneys' and other staff told him that he could enter the PROPERTY and change the locks if he thought the PROPERTY was abandoned.  WINDERS own contractor, REIFERT, called the Richmond Police because he stated that he thought he'd heard someone inside the house when he knocked on the front door when he arrived at the PROPERTY to change the locks.  Based on the statement of REIFERT [Exhibit 4], which REIFERT himself provided to the Richmond Police regarding hearing someone inside the house, WINDERS and REIFERT should have left the PROPERTY when no one answered the front door.  WINDERS and REIFERT did not have a Court Order giving them access to the PROPERTY. WINDERS and REIFERT did not have a Court Order giving them the right to change the locks on the PROPERTY.  WINDERS and REIFERT believing that someone was in the house felt they had the right to terrorize that person by cutting the lock off a

gate and illegally entering the PROPERTY, take property belonging to BROSNAN and change locks to the PROPERTY.

## TWELVTH CAUSE OF ACTION
## NEGLIGENCE
## DBN, CMS, WINDERS, REIFERT, KRASNEY, EXPRESS EVICTIONS, PRIORITY, CURTIS & BOUZANE

220.  Plaintiff refers to the allegations of the preceding paragraphs of this complaint, and incorporates the same herein by this reference as though set forth in full.

221.  DBN, CMS, WINDERS, PRIORITY, KRASNEY, EXPRESS EVICTIONS, REIFERT, CURTIS & BOUZANE undertook their actions intentionally and not by mistake.

222.  Reasonable care and prudence would have prevented the injuries suffered by BROSNAN.

223.  In negligent disregard of BROSNAN'S rights all defendants negligently caused BROSNAN to suffer injuries.

224.  WINDERS and REIFERT did not have any legal right to cut the lock off the gate and enter the PROPERTY, yet they did so.

225.  WINDERS and REIFERT did not have any legal right to change the locks on the PROPERTY, yet they did so.

226.  DBN, CMS, KRASNEY, BOUZANE and CURTIS negligently directed WINDERS to illegally enter the property.  Said direction was with the total disregard of the rights of BROSNAN.

227.  Defendants can't claim an inadvertent error because Officer Anderson informed them that they could not enter the property without a court order, yet they did so anyway.

## THIRTEENTH CAUSE OF ACTION
## ILLEGAL CONVERSION
## DBN, CMS, WINDERS, REIFERT, KRASNEY, EXPRESS EVICTIONS, CURTIS & BOUZANE

228.  Plaintiff refers to the allegations of the preceding paragraphs of this complaint, and incorporates the same herein by this reference as though set forth in full.

229.  DBN, CMS, WINDERS, KRASNEY, EXPRESS EVICTIONS, CURTIS & BOUZANE undertook their actions intentionally and not by mistake.

230.  WINDERS took personal property belonging to BROSNAN and has refused to return said personal property.

231.  WINDERS took the personal property at the direction of DBN, CMS, KRASNEY, EXPRESS EVICTIONS, CURTIS and BOUZANE.

232.  WINDERS, DBN, CMS, KRASNEY, EXPRESS EVICTIONS, CURTIS and BOUZANE did not have a court order allowing them to take personal property of BROSNAN.


### FOURTEENTH CAUSE OF ACTION
### PERSONAL INJURY
### TRESSPASS
### DBN, CMS, WINDERS, REIFERT, KRASNEY, EXPRESS EVICTIONS,
### CURTIS & BOUZANE


233.  Plaintiff refers to the allegations of the preceding paragraphs of this complaint, and incorporates the same herein by this reference as though set forth in full.

234.  DBN, CMS, KRASNEY, EXPRESS EVICTIONS, CURTIS & BOUZANE DIRECTED WINDERS to illegally enter the PROPERTY.

235.  WINDERS illegally entered the property.

236.  DBN, CMS, KRASNEY, EXPRESS EVICTIONS, CURTIS & BOUZANE or WINDERS had any legal right to trespass upon the PROPERTY.

237.  Defendants did not have a Court Order allowing entry to the PROPERTY.

238.  In brazen disregard for the law REIFERT cut the lock off a gate to the PROPERTY.

239.  In brazen disregard for the law WINDERS entered the PROPERTY and changed locks.

240.  WINDERS and REIFERT can't contend they were not told to not enter the PROPERTY without a court order because ANDERSON told them they needed a court order to enter the PROPERTY.

241.  WINDERS, holds a California Real Estate Broker's License.  In the course of obtaining said license WINDERS studied various course material regarding real estate.  Part of what he was taught was that he needs either valid permission or a court order to enter a PROPERTY.

WHEREFORE, plaintiff prays judgment against all the defendants and each of them as follows:

1. For actual monetary damages according to proof;

2. For general monetary damages according to proof;

3. For compensatory damages according to proof;

4. For negligence damages according to proof;

5. For actual personal injury damages according to proof;

6. For property damages according to proof;

7. For Punitive Damages against each defendant in the amount of $10,000,000.00;

8. For an award of reasonable attorneys' fees and costs according to proof;

9. For an injunction to stop the illegal activities of defendants;

10. For costs of suit; and

11. For such other and further relief as this Court deems just and proper.


DATED: September 3, 2008          ____/S/_____

                                  John Brosnan


## **VERIFICATION**

John Brosnan says:

I am the plaintiff in this matter and make this verification; I have read the foregoing complaint, know the contents thereof, and from information and belief believe the same to be true.  I verify under penalty of perjury that the foregoing is true and correct.


Dated: September 3, 2008          ____/S/_____

                                  John Brosnan

# EXHIBIT 1

# CMS

**Carrington Mortgage Services, LLC**

1610 E. Saint Andrew Place - Suite B150 - Santa Ana, CA 92705

TOLL FREE 800-790-9502

FAX 866-251-4563

## FACSIMILE TRANSMITTAL SHEET

| TO:<br>John Brosnan | FROM:<br>Alicia Jimenez |
|---|---|
| COMPANY: | DATE:<br>12/28/2007 |
| FAX NUMBER:<br>925-237-8300 | TOTAL NO. OF PAGES INCLUDING COVER:<br>3 |
| PHONE NUMBER:<br>510-779-1006 | RE:<br>Property at: 2313 GREENRIDGE DRIVE |

As discussed attached is the letter referencing the postponement and non refundable deposit. Please ensure you read, sign and fax back ASAP.

Acceptable forms of payments are certified funds (no personal or business checks will be accepted) acceptable ways of sending payment:

| **Overnight Mailing Address:** | **Western Union Quick Collect:** |
|---|---|
| Carrington Mortgage<br>Home Retention Dept.<br>1610 East St. Andrew Place, Suite B150<br>Santa Ana, CA 92705 | COMPANY: CARRINGTON MORTGAGE<br>CITY CODE: CARRINGTON MS<br>STATE: CA |

Though you have indicated you would prefer to deposit funds directly into our bank that option is not acceptable and you will need to follow the instructions provided.

Thank you,

Alicia Jimenez

Home Retention Department

Carrington Mortgage Services

This fax, and any attachment to it, contains privileged and confidential information intended only for the use of the individual (s) or entity named on the fax. If the reader of this fax is not the intended recipient, you are hereby notified that reading it is strictly prohibited. If you have received this fax in error, please immediately return it to the sender and destroy/shred all documents. Moreover, any confidential information contained in this fax (and any attachment) may only be used for the specific purpose for which it is being transmitted.

**CMS**
**Carrington Mortgage Services, LLC**

1610 E. Saint Andrew Place - Suite B150 Santa Ana, CA 92705
(800)561-4567   Fax (949)517-5220

LM707


12/28/07


HEATHER WOODHULL

157 WEST EL CAMINO REAL
SUNNYVALLE              CA   94087

RE:    Carrington Loan #0001545118
       2313 GREENRIDGE DRIVE
       RICHMOND                CA 94803-0000


Dear JOHN BROSNAN

As you are aware, Carrington Mortgage Services, LLC has
commenced foreclosure on your property based on a breach in the
terms of your mortgage. At the present time we have a Sheriff's
Sale and/or Trustee Sale set for 12/31/07 . We have received a
request from you and/or your agent requesting that, we postpone
this sale date predicated on the fact that you intend to
reinstate and/or payoff the loan at a future date.

We are willing to work with you, however, in order to do so, we
will require that a non-refundable deposit in the amount of
$500.00         be place with Carrington Mortgage to cover the
anticipated fees costs and interest that Carrington Mortgage may
incur or that will become due during the postponement period
you have requested.

If we receive in our office the deposit funds requested herein
above and this signed agreement, signed by all parties to this
loan, by 12/31/07 the deposit funds will be applied to amounts
due Carrington Mortgage to reinstate and/or payoff·
your loan at the time we receive the reinstatement and/or payoff.

If you agree and remit the deposit funds requested in the form of
Certified Funds, Cashier Check or Western Union Quick Collect, we
will notify our foreclosure attorney or trustee to postpone the
sale from 12/31/07 to 01/30/08 , or the earliest date thereafter.
It is thoroughly understood by all parties to this agreement that
in the event the loan is not reinstated or paid off before the
new sale date specified above, the deposit funds you have
voluntarily agreed to remit will forever be the property of
Carrington Mortgage and/or its assigns and under
no circumstances will they be refunded to you and/or any third
party remitting them on your behalf.

DEC-28-07  14:31  FROM-
Case 2:08-cv-04049-MEJ     Document 4     Filed 09/04/2008     T-326  P.003/003  F-205
Page 31 of 66

**CMS**
Carrington Mortgage Services, LLC

1610 E. Saint Andrew Place - Suite B150 Santa Ana, CA 92705
(800)561-4567   Fax (949)517-5220

7-07 page 1 of 2

By affixing my/our signatures to this agreement, I/We state that
we are in complete agreement with the terms and conditions stated
herein above.

_____ Date _____
Authorized Agent of Carrington Mortgage: Alicia Jimenez

_____ Date _____
Borrower: John Brosnan / Authorized

_____ Date _____
Co-Borrower:

-CREDIT REPORTING-
We have told a credit bureau about a late payment, missed payment
or other default on your account. This information may be
reflected in your credit report.

This communication is for the purpose of collecting a debt, and
any information obtained from the trustor(s) will be used for
that purpose. This notice is required by the provisions of the
Fair Debt Colletion Practices Act and does not imply that we are
attempting to collect money from anyone who has discharged the
debt under the bankruptcy laws of the United States.

-HUD STATEMENT-
Pursuant to Section 169 of the Housing and Community Development
Act of 1987, you may have the opportunity to receive counseling
from various local agencies regarding the retention of your home.
You may obtain a list of the HUD approved housing counseling
agencies by calling the HUD nationwide toll free telephone at
(800) 569-4287.

7-07 page 2 of 2

# EXHIBIT 2



**Carrington Mortgage Services, LLC**

1610 E. Saint Andrew Place - Suite B150 - Santa Ana, CA 92705

TOLL FREE 800-790-9502

FAX 866-251-4563

## FACSIMILE TRANSMITTAL SHEET

| TO:<br>John Brosnan | FROM:<br>Alicia Jimenez |
|---|---|
| COMPANY: | DATE:<br>12/28/2007 |
| FAX NUMBER:<br>925-237-8300 | TOTAL NO. OF PAGES INCLUDING COVER:<br>3 |
| PHONE NUMBER:<br>510-779-1006 | RE:<br>Property at: 2313 GREENRIDGE DRIVE |

As discussed attached is the letter referencing the postponement and non refundable deposit. Please ensure you read, sign and fax back ASAP.

Acceptable forms of payments are certified funds (no personal or business checks will be accepted) acceptable ways of sending payment:

**Overnight Mailing Address:**

Carrington Mortgage
Home Retention Dept.
1610 East St. Andrew Place, Suite B150
Santa Ana, CA 92705

**Western Union Quick Collect:**

**COMPANY:** CARRINGTON MORTGAGE
**CITY CODE:** CARRINGTON MS
**STATE:** CA

Though you have indicated you would prefer to deposit funds directly into our bank that option is not acceptable and you will need to follow the instructions provided.

Thank you,

Alicia Jimenez

Home Retention Department

Carrington Mortgage Services

This fax, and any attachment to it, contains privileged and confidential information intended only for the use of the individual (s) or entity named on the fax. If the reader of this fax is not the intended recipient, you are hereby notified that reading it is strictly prohibited. If you have received this fax in error, please immediately return it to the sender and destroy/shred all documents. Moreover, any confidential information contained in this fax (and any attachment) may only be used for the specific purpose for which it is being transmitted.

**CMS**
Carrington Mortgage Services, LLC

1610 E. Saint Andrew Place - Suite B150 Santa Ana, CA 92705
(800)561-4567   Fax (949)517-5220

LM707

12/28/07

HEATHER WOODHULL

157 WEST EL CAMINO REAL
SUNNYVALLE            CA   94087

RE:    Carrington Loan #0001545118
       2313 GREENRIDGE DRIVE
       RICHMOND              CA 94803-0000

Dear JOHN BROSNAN

As you are aware, Carrington Mortgage Services, LLC has
commenced foreclosure on your property based on a breach in the
terms of your mortgage. At the present time we have a Sheriff's
Sale and/or Trustee Sale set for 12/31/07 . We have received a
request from you and/or your agent requesting that, we postpone
this sale date predicated on the fact that you intend to
reinstate and/or payoff the loan at a future date.

We are willing to work with you, however, in order to do so, we
will require that a non-refundable deposit in the amount of
$500.00        be place with Carrington Mortgage to cover the
anticipated fees costs and interest that Carrington Mortgage may
incur or that will become due during the postponement period
you have requested.

If we receive in our office the deposit funds requested herein
above and this signed agreement, signed by all parties to this
loan, by 12/31/07 the deposit funds will be applied to amounts
due Carrington Mortgage to reinstate and/or payoff
your loan at the time we receive the reinstatement and/or payoff.

If you agree and remit the deposit funds requested in the form of
Certified Funds, Cashier Check or Western Union Quick Collect, we
will notify our foreclosure attorney or trustee to postpone the
sale from 12/31/07 to 01/30/08 , or the earliest date thereafter.
It is thoroughly understood by all parties to this agreement that
in the event the loan is not reinstated or paid off before the
new sale date specified above, the deposit funds you have
voluntarily agreed to remit will forever be the property of
Carrington Mortgage and/or its assigns and under
no circumstances will they be refunded to you and/or any third
party remitting them on your behalf.

DEC-28-07   14:31   FROM-
Case 2:08-cv-04049-MEJ   Document 4   Filed 09/04/2008   Page 35 of 66
T-326   P.003/003   F-205

**CMS**
Carrington Mortgage Services, LLC

1610 E. Saint Andrew Place - Suite B150 Santa Ana, CA 92705
(800)561-4567   Fax (949)517-5220

7-07 page 1 of 2

By affixing my/our signatures to this agreement, I/We state that
we are in complete agreement with the terms and conditions stated
herein above.

_____ Date _____
Authorized Agent of Carrington Mortgage: Alicia Jimenez

_____ Date _____
Borrower: John Brosnan / Authorized

_____ Date _____
Co-Borrower:

-CREDIT REPORTING-
We have told a credit bureau about a late payment, missed payment
or other default on your account. This information may be
reflected in your credit report.

This communication is for the purpose of collecting a debt, and
any information obtained from the trustor(s) will be used for
that purpose. This notice is required by the provisions of the
Fair Debt Colletion Practices Act and does not imply that we are
attempting to collect money from anyone who has discharged the
debt under the bankruptcy laws of the United States.

-HUD STATEMENT-
Pursuant to Section 169 of the Housing and Community Development
Act of 1987, you may have the opportunity to receive counseling
from various local agencies regarding the retention of your home.
You may obtain a list of the HUD approved housing counseling
agencies by calling the HUD nationwide toll free telephone at
(800) 569-4287.

7-07 page 2 of 2

# EXHIBIT 3

```
CONTINENTAL CURRENCY #405          Oper ID: 015   Quick Collect
6401 HOLLYWOOD BLVD                12/30/2007
HOLLYWOOD CA 90028                 409P PST        MTCN: 137-410-2818

Sender/Remitente: JOHN BROSNAN
Receiver/Destinatario: CARRINGTON MORTGAGE SERVICES

Code City/Codigo de la ciudad: CARRINGTONMS CA
Account #/Numero de cuenta: 0001545118
Reference #/Numero de referencia:
Attn/Atencion:
```

Amount/Cantidad:       $   500.00
Charge(s)/Cargos:
Service/Servicio:          12.95
Total/Total:           $   512.95

**WESTERN UNION**

```
TAKE 40% OFF! Valid only for one person to person Money in Minutes transfer
sent from US Agent to Agent in US or Canada. One discount per transfer.
No cash value. Agent-Use code J3961-126026053. Expires 01/31/08.
```

Agent Signature /
Firma del Agente                          Customer Signature /
                                          Firma del Cliente

IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY. PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. CERTAIN TERMS AND CONDITIONS GOVERNING THIS TRANSACTION AND THE SERVICES YOU HAVE SELECTED ARE SET FORTH ON THE REVERSE SIDE. BY SIGNING THIS RECEIPT, YOU ARE AGREEING TO THOSE TERMS AND CONDITIONS. IF LISTED ABOVE, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE RATE FOR YOUR TRANSACTION WERE DETERMINED AT THE TIME OF SEND. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE RECEIVER RECEIVES THE FUNDS. PROTECT YOURSELF FROM CONSUMER FRAUD. BE CAREFUL WHEN A STRANGER ASKS YOU TO SEND MONEY.

ADEMÁS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA, WESTERN UNION TAMBIÉN GANA DINERO CUANDO CAMBIA SUS DÓLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL REVERSO MÁS INFORMACIÓN SOBRE EL CAMBIO DE MONEDA. ALGUNOS TÉRMINOS Y CONDICIONES QUE RIGEN ESTA TRANSACCIÓN Y LOS SERVICIOS QUE USTED HA SELECCIONADO SE ESTABLECEN AL REVERSO. AL FIRMAR ESTE RECIBO USTED ACEPTA DICHOS TÉRMINOS Y CONDICIONES. SI APARECEN MÁS ARRIBA, LA MONEDA DE PAGO Y LA TASA DE CAMBIO DE SU TRANSACCIÓN SE DETERMINARON EN EL MOMENTO DEL ENVÍO. SI NO, LA TASA DE CAMBIO SE ESTABLECERÁ CUANDO EL DESTINATARIO RECIBA EL DINERO. PROTÉJASE DE LAS ESTAFAS. TENGA CUIDADO CUANDO UN DESCONOCIDO LE PIDA QUE ENVÍE DINERO.

**WESTERN UNION**

© 2004 Western Union Holdings, Inc. All Rights Reserved. Derechos Reservados

DRCCTSHTB (09/04)

# EXHIBIT 4

FEB. 15. 2008  4:15PM    AROUND TOWN REALTY.                                    P. 1
TO:E FAX

08-13267

DENNIS REIFERT
185 WOOD CT
VALLEJO, CA 94591    707-853-
                                9058

On 2/14/08 I went to 2313 Greenridge, Richmond to post an 18 day notice and check occupancy of the home. I knocked on the front door, nobody answered. Thought I heard somebody inside. So I called Police. Richmond officer showed up to do a security check. I explained the situation to the officer. He offered to do a check of the premises. We cut a lock to a backyard gate and checked windows for occupancy, there was no one inside as far as we could tell. I opened the garage in back and the officer went inside. At that time Paul Winders showed up and explained the situation to the Police officer after the officer left Paul W. found a back door opened. He entered, opened the front door and I changed the locks.

De Reifet

# EXHIBIT 5

OCCupant

we
Changen
Locks
To Sochy
T iteppents
Please
call

707
745 2777

# NOTICE OF RIGHT TO RECLAIM ABANDONED PERSONAL PROPERTY
## (Value MORE than $300.00)

TO: _Heather LewD Hull_

All former residents (tenants and subtenants) (full names)

When you vacated the premises situated at _2313 Green Ridge Drive, Richmond 9480_

County of _CONTRA COSTA_ ,California, the following personal property
remained at the premises (see description below).

Unless you pay the reasonable cost of storage for all the below-described personal property and take possession of the property which you claim, not later than eighteen (18) days after this Notice is deposited in the mail, this personal property may be disposed of pursuant to Civil Code Section 1988.

If you fail to reclaim the property, it will be sold at a public sale after notice of the sale has been given by publication. You have the right to bid on the property at this sale. After the property is sold and the cost of storage, advertising, and sale is deducted, the remaining money will be paid over to the county. You may claim the remaining money at any time within one year after the county receives the money.

DATE OF MAILING OF THIS NOTICE: _2/5/08_

DATE OF EXPIRATION OF THIS NOTICE: _2/23/08_

You may claim this property at: _THE PRoPerty at 2313 Greenridge_
_DRIve Richmond CA 94803_
(Address where property may be claimed)

_____
Owner/Agent

## THE ABANDONED PERSONAL PROPERTY IS DESCRIBED AS FOLLOWS:

_Household ~~Fm~~ Items_
_BarBque   Cars   Trucks_

**UNAUTHORIZED REPRODUCTION OF THIS FORM IS ILLEGAL**

CA. ...roved Form
...fornia ...rtment Association
...0.0 —.. ...ed 2/94 — Copyright 1994



# 3/30-FORECLOSURE NOTICE TO QUIT

TO: _Heather Woodhull_

And/or all other persons in possession of the premises described as:

Property Address: _2313 Greenridge Dr Richmond, CA 94803_

The above referenced real property was sold in accordance with section 2924 of the California Civil Code under a power of sale contained in a deed of trust securing said real property, and title under the sale has been duly perfected. The new owner seeks in good faith to recover possession of the premises.

WITHIN THREE DAYS AFTER SERVICE OF THIS NOTICE, YOU ARE HEREBY REQUIRED TO VACATE AND DELIVER POSSESSION OF THE PREMISES DESCRIBED ABOVE NOW HELD AND OCCUPIED BY YOU TO THE UNDERSIGNED **UNLESS** YOU ARE A TENANT OR SUBTENANT WHO RENTED THE PREMISES BEFORE THE FORECLOSURE SALE. IN THAT EVENT, YOU ARE REQUIRED TO VACATE THE PREMISES WITHIN THIRTY DAYS AFTER SERVICE OF THIS NOTICE.

This notice is intended as a Notice to Quit pursuant to California Code of Civil Procedure Section 1161a for the purpose of terminating your occupancy of the premises. This notice specifically terminates any oral/written agreement you may have with respect to the premises.

**NOTE:** If you are not one of the persons named above or you claim to be a tenant or subtenant who is entitled to remain in the premises for more than three days, **YOU MUST GIVE NOTICE TO THE UNDERSIGNED WITHIN THREE DAYS OF THE DATE THIS NOTICE IS SERVED.**

Dated: _1-29-08_

Law Office of John E. Bouzane

_A. Turner_

Attorneys for the new owner:

_Carrington Mortgage Services_
_1610 E St Andrews Pl #B150_
_Santa Ana, CA 92705_

Contact Information
_707 / 145 - 2777_

634 Oak Ct  San Bernardino, Ca 92410 (909) 889-5151 fax (909) 889-3900



Around Town Realty
525 First Street
Benicia, CA 94510
707.745.2777
707.745.3777 fax
www.paulwinders.com
paul@paulwinders.com

Heather Woodhull
2313 Greenridge Dr
Richmond, Ca 94803

Dear Occupant,

I, Paul Winders, represent your prior lender for the above listed
address. I would like to make arrangements to pick up keys if you
have moved out. Please call me at your earliest convenience so we
can make these arrangements. If you need moving assistance, the
lender has a program called Cash for Keys that you may be eligible
for if you act immediately. Responding quickly will avoid having
an eviction on your credit report and in court records. I look
forward to hearing from you.

Thank You,

Paul R. Winders

# 3/30-FORECLOSURE NOTICE TO QUIT

TO: _Heather Woodhull_

And/or all other persons in possession of the premises described as:

Property Address: _2313 Greenridge Dr Richmond, CA 94803_

The above referenced real property was sold in accordance with section 2924 of the California Civil Code under a power of sale contained in a deed of trust securing said real property, and title under the sale has been duly perfected. The new owner seeks in good faith to recover possession of the premises.

WITHIN THREE DAYS AFTER SERVICE OF THIS NOTICE, YOU ARE HEREBY REQUIRED TO VACATE AND DELIVER POSSESSION OF THE PREMISES DESCRIBED ABOVE NOW HELD AND OCCUPIED BY YOU TO THE UNDERSIGNED UNLESS YOU ARE A TENANT OR SUBTENANT WHO R ENTED THE PREMISES BEFORE THE FORECLOSURE SALE. IN THAT EVENT, YOU ARE REQUIRED TO VACATE THE PREMISES WITHIN THIRTY DAYS AFTER SERVICE OF THIS NOTICE.

This notice is intended as a Notice to Quit pursuant to California Code of Civil Procedure Section 1161a for the purpose of terminating your occupancy of the premises. This notice specifically terminates any oral/written agreement you may have with respect to the premises.

**NOTE:** If you are not one of the persons named above or you claim to be a tenant or subtenant who is entitled to remain in the premises for more than three days, YOU MUST GIVE NOTICE TO THE UNDERSIGNED WITHIN THREE DAYS OF THE DATE THIS NOTICE IS SERVED.

Dated: 1-29-08

Law Office of John E. Bouzane

A. Yunur

Attorneys for the new owner:

Carrington Mortgage Services
1610 E St Andrews Pl #B150
Santa Ana, CA 92705

Contact Information
707 745. 2777

634 Oak Ct, San Bernardino, Ca 92410 (909) 889-5151 fax (909) 889-3900

# EXHIBIT 6

# RICHMOND POLICE DEPT. 0710

401 - 27th Street
Richmond, California 94804

| | | DATE | | |
|---|---|---|---|---|
| ☐ DOMESTIC VIOLENCE | | RELATED IN | | 1 CASE NO. |
| ☐ VIC VIOLENT CRIME 60 OR OLDER CUSTODY | | ☐ | 08-13267 | 2 PAGE 1 OF 5 |

**OCCURRENCE**

| 3 CODE SECTION | 4 TITLE | 5 CLASSIFICATION | 6 |
|---|---|---|---|
| 459 P.C. | Burglary | Residence | FELONY ☒ / MISDEMEANOR |

| 7 DATE & TIME OCCURRED - DAY | 8 DATE & TIME REPORTED | 9 WHERE OCCURRED |
|---|---|---|
| 02/04 to 02/10/08 1100/0930 hours | 02/12/08 1507 hours | 2313 Greenridge Drive, Richmond, CA 94801 |

**VICTIM**

| 10 VICTIM NAME - LAST, FIRST, MIDDLE (FIRM IF BUSINESS) | 11 RESIDENCE ADDRESS | 12 RES PHONE |
|---|---|---|
| Brosnan, John n.m.n. | 2313 Greenridge Drive, Richmond, CA 94801 | 510-779-1006 |

| 13 OCCUPATION | 14 DOB | 15 SEX | 16 RACE | 17 AGE | 18 BUSINESS ADDRESS/SCHOOL | 19 BUS PHONE OR BPC |
|---|---|---|---|---|---|---|
| Self-Employed | 04/07/64 | M | W | 44 | | |

| COMPLETE IF PERSONAL INJURY OR RAPE | 20 WHERE HOSPITAL/SUFFD | 21 DATE/TIME | 22 ATTENDING PHYSICIAN | 23 CHART NUMBER | 24 NATURE OF INJURY |
|---|---|---|---|---|---|

**OTHER/INVOLVED**

INVL CODES VIC = VICTIM WIT = WITNESS RP = REPORTING PARTY

| 25 INVL | 26 NAME - LAST, FIRST, MIDDLE (FIRM IF BUSINESS) | 27 RESIDENCE ADDRESS | 28 RES PHONE |
|---|---|---|---|
| oth | Winders, Paul n.m.n. | | |

| 29 OCCUPATION | 30 DOB | 31 SEX | 32 RACE | 33 AGE | 34 BUSINESS ADDRESS/SCHOOL | 35 BUS PHONE OR BPC |
|---|---|---|---|---|---|---|
| Real state agent | 07/07/54 | M | W | 53 | 525 First Street, Benicia, CA 94510 | 707-745-2777 |

| 36 INVL | 37 NAME - LAST, FIRST, MIDDLE (FIRM IF BUSINESS) | 38 RESIDENCE ADDRESS | 39 RES PHONE |
|---|---|---|---|

| 40 OCCUPATION | 41 DOB | 42 SEX | 43 RACE | 44 AGE | 45 BUSINESS ADDRESS/SCHOOL | 46 BUS PHONE OR BPC |
|---|---|---|---|---|---|---|

| 47 INVL | 48 NAME - LAST, FIRST, MIDDLE (FIRM IF BUSINESS) | 49 RESIDENCE ADDRESS | 50 RES PHONE |
|---|---|---|---|

| 51 OCCUPATION | 52 DOB | 53 SEX | 54 RACE | 55 AGE | 55 BUSINESS ADDRESS SCHOOL | 57 BUS PHONE OR BPC |
|---|---|---|---|---|---|---|

*DATA*
*AU*
MAR 05 2008
*ENTRY*

**SUSPECT**

| 58 ADDITIONAL VICTIM (S/WITNESSES)? ☐ |
|---|

| 59 SUSPECT #1 (LAST, FIRST, MIDDLE) | 60 NICKNAME/AKA | 61 DOB | 62 SEX | 63 RACE | 64 AGE | 65 HT | 66 WT | 67 HAIR | 68 EYES |
|---|---|---|---|---|---|---|---|---|---|
| Unknown | | unk | unk | unk | unk | unk | unk | unk | unk |

| 69 SUSPECTS ADDRESS | 70 CLOTHING DESCRIPTION | 71 CITE # | 72 ARREST # | 73 MIRANDA ☐YES ☐NO |
|---|---|---|---|---|
| Unknown | Unknown | | | |

| 74 SUSPECT #2 (LAST, FIRST, MIDDLE) | 75 NICKNAME ,AKA | 76 DOB | 77 SEX | 78 RACE | 79 AGE | 80 HT | 81 WT | 82 HAIR | 83 EYES |
|---|---|---|---|---|---|---|---|---|---|

| 84 SUSPECT'S ADDRESS | 85 CLOTHING DESCRIPTION | 86 CITE # | 87 ARREST # | 88 MIRANDA ☐YES ☐NO |
|---|---|---|---|---|

| 89 SUSPECT BUILD | 90 COMPLEXION | 91 HAIR STYLE | 92 HAIR LGTH/TYPE | 93 FACIAL HAIR | 94 GENERAL APPEARANCE | 95 SPEECH | 96 DEMEANOR |
|---|---|---|---|---|---|---|---|
| 1 2 SUSPECT | 1 2 SUSPECT | 1 2 SUSPECT | 1 2 SUSPECT | 1 2 SUSPECT | 1 2 SUSPECT | 1 2 SUSPECT | 1 2 SUSPECT |
| ☒☐ Unknown | ☐☐ Unknown UNKN | ☐☐ Unknown LINK | ☐☐ Unknown UNKN | ☐☐ Unknown UNKN | ☐☐ Unknown INKN | ☐☐ Unknown LINK | ☐☐ Unknown UNK |
| ☐☐ Thin | ☐☐ Acne AC | ☐☐ Afro/Nat'l BALD | ☐☐ Bald GLSH | ☐☐ Clean Shave CLSH | ☐☐ Conservative ACC | ☐☐ Accent - ANG | ☐☐ Angry ANG |
| ☐☐ Muscular | ☐☐ Dark DR | ☐☐ Braided COLLA | ☐☐ Collar FULB | ☐☐ Full Beard FULD | ☐☐ Only OR | ☐☐ Lisps LSP | ☐☐ Apologetic APG |
| ☐☐ Average | ☐☐ Freckled FR | ☐☐ Bushy LONG | ☐☐ Long FUMA | ☐☐ Fu Manchu OR | ☐☐ Disguise LOU | ☐☐ Loud CAL | ☐☐ Calm CAL |
| ☐☐ Heavy | ☐☐ Light LY | ☐☐ Greasy BHOU | ☐☐ Shoulder GOAT | ☐☐ Goatee FL | ☐☐ Flashy LGP | ☐☐ Low Pitched D3O | ☐☐ Disorganized D3O |
| | ☐☐ Medium ME | ☐☐ Military SHOR | ☐☐ Short LOWL | ☐☐ Lower Lip GL | ☐☐ Good Looking OFF | ☐☐ High Pitched IRR | ☐☐ Irrational IRR |
| | ☐☐ Pale PM | ☐☐ Ponytail SOAR | ☐☐ Coarse MUST | ☐☐ Mustache ML | ☐☐ Military OFF | ☐☐ Offensive NER | ☐☐ Nervous NER |
| | ☐☐ Pocked FROG | ☐☐ Processed FINE | ☐☐ Fine N/FUZ | ☐☐ None/Fuzz UN | ☐☐ Unkempt NSP | ☐☐ Non English Speaking POL | ☐☐ Polite POL |
| | ☐☐ Ruddy RU | ☐☐ Straight THIC | ☐☐ Thick SIDE | ☐☐ Sideburns UN | ☐☐ Unusual Odor NOM | ☐☐ Normal PRO | ☐☐ Professional PRO |
| | ☐☐ Sallow CA | ☐☐ Wavy/Curly THIN | ☐☐ Thinning WG | ☐☐ Dishevan WG | ☐☐ Well Groomed TLK | ☐☐ Talkative STU | ☐☐ Stuper STU |
| | ☐☐ Tanned TA | ☐☐ wig WRY | ☐☐ Wiry VNDK | ☐☐ Van Dyke CA | ☐☐ Casual RAP | ☐☐ Rapid VIO | ☐☐ Violent VIO |
| | ☐☐ Other OT | ☐☐ Corn Rows SHAV | ☐☐ Shaved OTHT | ☐☐ Other OT | ☐☐ Clean Cut DISG | ☐☐ Disguised NOR | ☐☐ Normal NOR |
| | | ☐☐ Crew Cut RCHL | ☐☐ Receeding | | ☐☐ Other SOF | ☐☐ Soft PRN | ☐☐ Profane PRN |
| | | ☐☐ Other MED | ☐☐ Medium | | SCF | STU ☐☐ Stuter | EFN ☐☐ Effeminate |
| | | PUNK | | | | | |

97 FURTHER SUSPECT DESCRIPTION (I.E. GLASSES, TATTOOS, TEETH, BIRTHMARKS, JEWELRY, SCARS, MANNERISMS, WEAPONS, CLOTHES, SHOES, MASKS, HATS, GLOVES, DEFORMITIES, ETC.)

SUSPECT 1:

SUSPECT 2:

| 98 ADDITIONAL SUSPECTS LISTED? ☐YES ☐NO |
|---|

**VEHICLE**

INVL CODES VIC - VICTIM SUS -SUSPECT OTH - OTHER

| 98 INVL | 100 LICENSE NUMBER | 101 LIS | 102 LIY | 103 V YR | 104 V MA | 105 V MO | 106 V ST | 107 V CO |
|---|---|---|---|---|---|---|---|---|
| N/A | | | | | | | | |

| 108 TOWED TO | 109 HOLD ☐YES ☐NO | 110 ADDITIONAL VEHICLE IDENTIFIERS (DAMAGE, CHROME WHEELS, VIN, ETC) | | | | | | |
|---|---|---|---|---|---|---|---|---|

| 111 INVL | 112 LICENSE NUMBER | 113 LIS | 114 LIY | 115 V YR | 116 V MA | 117 V MO | 118 V ST | 119 V CO |
|---|---|---|---|---|---|---|---|---|

| 120 TOWED TO | 121 HOLD ☐YES ☐NO | 122 ADDITIONAL VEHICLE IDENTIFIERS (DAMAGE, CHROME WHEELS, VIN, ETC) | | | | | | |
|---|---|---|---|---|---|---|---|---|

**ROUTING**

| 123 ROUTING | | | | | | 124 REMARKS |
|---|---|---|---|---|---|---|
| PROPERTY | COM RPT. | | | | | |
| AT | HOMICIDE | PROPERTY | 1 | STAT | 1 | R FILE | 1 |
| ADM | JUV | VICE | | RTATE | | TOTAL | 3 |
| S.S CAPT | FRAUD | CA | | D.A | | ASSIGNED | PROP |
| UNI CAPT | ORG CAPT | TRAFFIC | | IA | | | |

LT. M. GORMLEY 1123

OVER

# RICHMOND POLICE DEPT. 0710

| 125 CASE NO. | 126 |
|---|---|
| 08-13267 | PAGE **2** OF **5** |

## 127 INVESTIGATIVE ACTIVITIES N/A

INVESTIGATION

- [ ] 1 Dusted for Latents
- [ ] 2 Tool Marks Photographed
- [ ] 3 Vehicle/Shoe Tracks Photographed
- [ ] 4 Scene Photographed
- [ ] 5 Victim Photographed
- [ ] 6 So'' Diagramed
- [ ] 7 Neighbors Checked
- [ ] 8 Area Checked
- [ ] 9 Area Checked
- [ ] 10 Witness(es) Contacted
- [x] 11 Victim(s) Contacted
- [ ] 12 Tech Whee?
- [ ] 13 Dist Notified Who?
- [ ] 14 Crime Prevention Survey Completed
- [ ] 15 Telstype or BOL
- [ ] 16 Draw

### 132 PHYSICAL EVIDENCE

- FP [ ] Finger Prints
- OP [ ] Other Prints
- WP [ ] Weapon
- TL [ ] Tool Marks
- VH [ ] Vehicle
- PH [ ] Photos
- HA [ ] Hair
- GT [ ] Semen
- BL [ ] Blood/Saliva
- PI [ ] Projectile (Bullet)/Casing
- CL [ ] Clothing
- TT [ ] Tire Tracks
- IG [ ] Insulation/Dust
- PS [ ] Paint Samples
- GL [ ] Glass/Fragments
- DO [ ] Documents
- MS [ ] Mud/Soil

## 129 SOLVABILITY

Solvability

- [ ] SUSPECT CAN BE NAMED
- [ ] SUSPECT CAN BE LOCATED
- [ ] SUSPECT CAN BE DESCRIBED
- [ ] SUSPECT CAN BE IDENTIFIED
- [ ] THERE IS A WITNESS TO CRIME
- [ ] THERE IS SIGNIFICANT M.O. PRESENT
- [ ] MAJOR PROPERTY LOSS ($3,000 OR OVER)
- [ ] STOLEN PROPERTY IS TRACEABLE
- [ ] STOLEN PROPERTY CAN BE IDENTIFIED
- [ ] SERIAL NUMBERS ARE KNOWN
- [ ] THERE IS SIGNIFICANT PHYSICAL EVIDENCE
- [ ] SUSPECT VEHICLE LICENSE IS KNOWN
- [ ] SUSPECT VEHICLE CAN BE DESCRIBED
- [ ] SUSPECT VEHICLE CAN BE IDENTIFIED

## 130 VICTIM VULNERABILITY — 1 2 VICTIM

- ELDER [ ] [ ] Elderly
- MENTL [ ] [ ] Mental Disability
- PHYDS [ ] [ ] Physical Disability
- YOUNG [ ] [ ] Young/Small
- FORGN [ ] [ ] Foreign

Weapon Used Against Victim [ ] Yes [ ] No

## 131 VICTIM ACTIONS — 1 2 VICTIM

- PROST [ ] [ ] Involved with Prostitute
- ALONE [ ] [ ] Alone
- AWAY [ ] [x] Away From Scene of Crime
- HITCH [x] [ ] Hiken Hiking
- WALK [ ] [ ] Walking

MORE ...

### CONTINUED ... — 1 2 VICTIM

- INRES [ ] [ ] In Restaurant
- JOG [ ] [ ] Jogging
- PKLOT [ ] [ ] In Parking Lot
- SLEEP [ ] [ ] Sleeping
- DRIVE [ ] [ ] Driving
- SHOP [ ] [ ] Shopping

### CONTINUED... — 1 2 VICTIM

- BIKE [ ] [ ] Biking
- UIAD [ ] [ ] Under the Influence
- OTHER [ ] [ ] Other
- WAIPT [ ] [ ] Waiting for Public Transit
- PAPT [ ] [ ] Passenger, Public Transit
- PASPV [ ] [ ] Passenger, Private Vehicle

## 132 NARRATIVE

**SEE NARRATIVE STARTING ON PAGE # 3**

| 133 REPORTING OFFICER | 134 I.D. # | 135 APPROVED BY | 136 DATE |
|---|---|---|---|
| RODERICK, WM | 267 | Lt. M. GORMLEY 1123 | 3/4/08 |

# RICHMOND POLICE DEPARTMENT 0710
## Patrol Bureau Narrative

| | |
|---|---|
| CASE NO: | 08-13267 |
| PAGE NO: | 3 OF 5 |

| CODE SECTION | CRIME/CLASSIFICATION | LOCATION |
|---|---|---|
| 459 PC | Burglary/ Residential | 2313 Greenridge Drive, Richmond, CA |

| VICTIM=S NAME - LAST, FIRST, MIDDLE (FIRM IF BUS.) | DATE OF ORIGINAL |
|---|---|
| Brosnan, John n.m.n. | 02/12/08 |

Point Of Entry:  West sliding door.

On February 12, 2008 at approximately 1500 hours, I was dispatched to 2313 Greenridge Dr., Richmond. Police Communications advised that Sgt. Silva had directed a burglary investigation be initiated at that location.  Communications also advised that on February 10, 2008, a Richmond Police Officer was sent to this same location on a similar detail and the detail was cleared with an R-13 (civil matter).

I contacted R/P Brosnan, who told me the following in summary:

Brosnan has been having an ongoing dispute with his mortgage company, who are in the process of doing a foreclosure on his residence.  Before leaving for Los Angeles on February 04, 2008 at approximately 2300 hours, Brosnan locked all the doors and windows to his residence.

Brosnan returned to his residence from Los Angeles on February 10, 2008 at approximately 0956 hours. Brosnan always parks his vehicle in the area to the rear of the residence and enters the residence from the rear, through the sliding door.  On the day of his return, Brosnan noticed the sliding door was ajar about six to eight inches.  Brosnan entered the residence but did not immediately see anything out of order.  Brosnan said he went to the front door and located two notices from a real state agent, Paul Winders.  The notices were regarding foreclosure proceedings on the residence.  One notice was of the right to reclaim abandoned personal property, mailed to 2313 Greenridge Dr. on February 05, 2008.  There was also a "3/30 day notice to quit" dated January 29, 2008.  Brosnan said after finding the notices, he then discovered some of his personal items missing from the residence.

I spoke on the telephone with the real estate agent, Paul Winders, who told me the following in summary:

Winders was assigned to manage the property at 2313 Greenridge Drive in early January of 2008. Winders said on January 31, 2008 at 1230 hours, he put duct tape the front door locks and posted a "3/30 day notice to quit."  Winders said he went back to 2313 Greenridge Drive on February 01 and February 02, 2008 to check on the property and in an effort to determine if anyone was living on the property.

| REPORTING OFFICERS | TYPED BY | DATE | ROUTED BY |
|---|---|---|---|
| Roderick, Wm # 267 | wer | | LT. M. GORMLEY 1123 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Robbery ___ | Com. Rel. ___ | A.T. ___ | Homicide ___ | Property ___ | Stat ___ | Admin. ___ | Juv. ___ | Vice ___ | Other:_____ | Assigned:_____ |
| State ___ | SS Capt. ___ | Fraud ___ | C.A. ___ | D.A. ___ | Patrol Capt. ___ | CIB Capt. ___ | Traffic ___ | I.A. ___ | Other:_____ | Total ___ |

| RICHMOND POLICE DEPARTMENT 0710 | CASE NO: 08-13267 |
| Patrol Bureau Narrative | PAGE NO: 4 OF 5 |

| CODE SECTION | CRIME/CLASSIFICATION | LOCATION |
|---|---|---|
| 459 PC | Burglary/ Residential | 2313 Greenridge Drive, Richmond, CA |

| VICTIM=S NAME - LAST, FIRST, MIDDLE (FIRM IF BUS.) | DATE OF ORIGINAL |
|---|---|
| Brosnan, John n.m.n. | 02/12/08 |

On February 04, 2008, Winders met with his contractor, Reifert, to have the doors rekeyed. Reifert had called a police officer to this location and both Winders and Reifert spoke to the officer. The Officer told Winders that Reifert had cut the lock off the gate leading into the back yard. Winders was also told that the Officer and Reifert had found the garage door unlocked and went inside to check, but found no one inside the garage. The officer explained to Winders about the law, the bank's rights and the tenant's right. Winders said the Officer then left.

Winders called the bank's eviction attorney, who advised him if that if he believed that no one has been in the residence and that the property appeared to be abandoned, he could have the locks to the residence re-keyed. While conducting a check of the premises, Winders found the back sliding door unlocked. Believing that the house had been abandoned, Winders had Reifert re-key the locks on the front door. As instructed by the eviction attorney, Winders took photographs of the interior of the residence. Winders secured and locked all the doors and windows before leaving.

Winders received a phone call from Brosnan on February 10, 2008. Brosnan asked Winders why he had changed the locks to the residence. Brosnan said he was calling the police to report Winders for breaking into his residence.

I learned that the officer previously detailed to this address was Officer J. Anderson. I spoke with Officer Anderson, who told me the following in summary:

On February 05, 2008, Officer Anderson was dispatched to 2313 Greenridge Drive for a civil stand-by. Officer Anderson contacted Reifert, who told him he was a contractor hired by a real state agent, Winders. At the time of this contact, Reifert was waiting for Winders to arrive and determine if the property was abandoned. Officer Anderson said Reifert cut the lock off the back gate to allow access to the rear portion of the property and allow them to do a security check of the premises. They walked to the back garage door and found it was unlocked, but the rest of the doors and windows were closed and secure.

When Winders arrived, Officer Anderson explained to him that absent a court order, he could not go onto the property to re-key the locks. Officer Anderson left Winders and Reifert at the residence.

| REPORTING OFFICERS | TYPED BY | DATE | ROUTED BY |
|---|---|---|---|
| Roderick, Wm # 267 | wer | | LT. M. GORMLEY 1123 |

| Robbery ___ | Com. Rel. ___ | A.T. ___ | Homicide ___ | Property ___ | Sint ___ | Admin. ___ | Juv. ___ | Vice ___ | Other:_____ | Assigned:_____ |
| State ___ | SS Capt. ___ | Fraud ___ | C.A. ___ | D.A. ___ | Patrol Capt. ___ | CIB Capt. ___ | Traffic ___ | I.A. ___ | Other:_____ | Total ___ |

# RICHMOND POLICE DEPARTMENT 0710
## Patrol Bureau Narrative

| | CASE NO: |
|---|---|
| | 08-13267 |

PAGE NO:

5 OF 5

| CODE SECTION | CRIME/CLASSIFICATION | LOCATION |
|---|---|---|
| 459 PC | Burglary/ Residential | 2313 Greenridge Drive, Richmond, CA |

| VICTIM-S NAME - LAST, FIRST, MIDDLE (FIRM IF BUS.) | DATE OF ORIGINAL |
|---|---|
| Brosnan, John n.m.n. | 02/12/08 |

I attached a copy of contactor Dennis Reifert's e-mailed statement to my report.

I also attached a copy of Winders e-mailed statement to my report.

A property loss report was faxed to me on February 27, 2008 at 2037 hours has also been attaché to this report..

Route to Property.

| REPORTING OFFICERS | TYPED BY | DATE | ROUTED BY |
|---|---|---|---|
| Roderick, Wm # 267 | wer | | LT. M. GORMLEY 1123 |

| Robbery | Com. Rel. | A.T. | Homicide | Property | Stat | Admin. | Juv. | Vice | Other: | Assigned: |
|---|---|---|---|---|---|---|---|---|---|---|
| State | SS Capt. | Fraud | C.A. | D.A. | Patrol Capt. | CIB Capt. | Traffic | I.A. | Other: | Total |

# PROPERTY LOSS REPORT

## RICHMOND POLICE DEPARTMENT

42

| CRIME | DATE OF ORIGINAL REPORT | | CASE # |
|---|---|---|---|
| 459 P.C. | 2/12/08 | | 13265 08-T2533 |

**VICTIM (AS IN ORIGINAL REPORT)**

**LOCATION** 2313 GREENRIDGE DR.

| THIS SECTION IS TO BE COMPLETED BY DETECTIVES: | Original Loss $ | Additional Loss $ | Total Loss to Date: $ | Additional Serialized Property: | Yes ☐ No ☐ |
|---|---|---|---|---|---|

**READ INSTRUCTIONS ON REVERSE SIDE BEFORE COMPLETING THIS FORM. LIST ADDITIONAL PROPERTY LOSS IN THIS ORDER: STOLEN U.S. CURRENCY, GUNS, ITEMS WITH SERIAL NUMBERS, OTHER ITEMS.**

| QUANTITY | ITEM & DESCRIPTION (COLOR & SIZE) | SERIAL # | BRAND | DOLLAR VALUE |
|---|---|---|---|---|
| 2 | Nikon D2Xs | | | 8,800 |
| 1 | Mac Book Pro | | | 2,800 |
| ~90 | DVDs with digital art and photos | | | 1,000,000 |
| 1 | File case with paperwork | | | ???? |
| 1 | Nikon lens | | | 1,800 |
| 1 | Nikon lens | | | 1,200 |
| 1 | Lowe Pro Camera bag | | | 240 |
| 2 | Nikon batteries | | | 200 |
| 4 | 8 Gigabyte Compact Flashcards | | | 1,600 |
| 1 | Nikon SB800 Flash | | | 300 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**(USE BLANK SHEET IF MORE SPACE IS REQUIRED)**

**TOTAL :** 1,016,740

**SIGNATURE:** _____          **DATE:** _____

**PHONE NUMBER (ALSO DAY-TIME PHONE NUMBER):** 510.779.1006

| APPROVING SUPERVISOR/SERIAL # | REPORTING DETECTIVE / SERIAL # |
|---|---|
| | |

| ROBBERY | COM REL. | INTEL | B OF I | |
|---|---|---|---|---|
| A.T. | HOMICIDE | PROPERTY | STAT | R. FILE |
| ADM. | JUV. | VICE | STATE | TOTAL |
| S.S. CAPT. | FRAUD | C.A. | D.A. | ASSIGNED: |
| UNF. CAPT. | CT8 CAPT. | TRAFFIC | I.A. | |

REVISED 04/24/07



Around Town Realty
525 First Street
Benicia, CA 94510
707.745.2777
707.745.3777 fax



To who it may concern

We were assigned to manage the property at 2313 Greenridge Drive in early January , We posted notices which were ignored and remained on the property . Most recently we taped the locks with duct tape  and posted notices including and 3/30 day notice to quit on 1/31 at 12/30 pm.  I drove by again on 2/1 and then came back 2/2 and the notices were still there. I had a conversation with the woman who lives across the street ( a black female in her 30's) as well as my contractor had conversations  with her. We were both told that she had not seen anyone there in weeks.

My contractor called Richmond Police about an hour before I arrived and he had met with the officer I have his card somewhere if you need his name Dennis the contractor with the officer cut a fence lock and walked around the property. . When I arrived we spoke about the law the banks rights and tenants rights I called Fast eviction and spoke with the attorney there as well as other staff there and was told that if we believed that no one had been at the house and it was possible that it was abandoned we could have it re keyed.  We walked around and entered through the slider at the left rear of the property which was not locked as well as one window which was in the back of the house. I took pictures of most rooms and the contractor changed the door locks in the front. I believe the only thing I may have touched would have been the flush handle of a toilet as I had to urinate  badly and perhaps one closet door. Nothing was taken from the home. We were in the home about 2 minutes. It appeared to be a more like a strange museum than a home. There was no sign of cooking or any recent life at all. Things were stacked up like they were in storage or ready to be moved. The only sign of recent habitation was one large tennis shoe on the floor near one bed. I  have pictures of most rooms if and can send  them to you if you would like.

The attorneys office asked us to go back and inventory all the items in the house, which we were going to do the day after all this drama struck Sunday morning. We also discussed a notice with the attorney  which I prepared and posted the home the on Feb 5th.

I can give you more detail on any of this if you would like,

Paul R. Winders

I          a

FEB. 15. 2008 4:15PM    AROUND TOWN REALTY...                    P. 1
TO:E FAX

08-13267

DENNIS REIFERT
185 WOOD CT
VALLEJO, CA 94591    707-853-
9058

On 2/4/08 I went to

2313 Greenridge, Richmond to post

an 18 day notice and check occupancy

of the home. I knocked on the

front door, nobody answered. Thought

I heard somebody inside. So I

called Police. Richmond officer showed

up to do a security check. I explained

the situation to the officer. He offered

to do a check of the premises. We cut

a lock to a backyard gate and checked

windows for occupancy, there was no one

Inside as far as we could tell. I opened

the garage in back and the officer went

inside. At that time Paul Winders showed up

and explained the situation to the Police officer

After the officer left Paul W. found a back

door opened. He entered, opened the front door

and I changed the locks.    Dn Reifert

Occupant

we
charen

(ocks
Tu Socly

T ltopßcRts

Ploaco

cql

7c7

7u5
.2777



08-73267

Around Town Realty
525 First Street
Benicia, CA 94510
707.745.2777
707.745.3777 fax
www.paulwinders.com
paul@paulwinders.com

Heather Woodhull
2313 Greenridge Dr
Richmond, Ca 94803

Dear Occupant,

I, Paul Winders, represent your prior lender for the above listed address. I would like to make arrangements to pick up keys if you have moved out. Please call me at your earliest convenience so we can make these arrangements. If you need moving assistance, the lender has a program called Cash for Keys that you may be eligible for if you act immediately. Responding quickly will avoid having an eviction on your credit report and in court records. I look forward to hearing from you.

Thank You,

Paul R. Winders

08-73281



525 First Street
Benicia, CA 94510

Office: 707-745-2777
Fax: 707-745-3777
Cell: 707-975-4033
Email: paul@paulwinders.com
www.paulwinders.com

**Paul Winders**
Broker / Owner / Realtor®

RESIDENTIAL · COMMERCIAL · LOTS & LAND · BUSINESS SALES

---

525 First Street
Benicia, CA 94510

Cell the
TcDay

Office: 707-745-2777
Fax: 707-745-3777
Cell: 707-975-4033
Email: paul@paulwinders.com
www.paulwinders.com

**Paul Winders**
Broker / Owner / Realtor®

RESIDENTIAL · COMMERCIAL · LOTS & LAND · BUSINESS SALES

08-13269

# 3/30- FORECLOSURE NOTICE TO QUIT

TO: Heather Woodhull

And/or all other persons in possession of the premises described as:

Property Address: 2313 Greenridge Dr Richmond, CA 94803

The above referenced real property was sold in accordance with section 2924 of the California Civil Code under a power of sale contained in a deed of trust securing said real property, and title under the sale has been duly perfected. The new owner seeks in good faith to recover possession of the premises.

WITHIN THREE DAYS AFTER SERVICE OF THIS NOTICE, YOU ARE HEREBY REQUIRED TO VACATE AND DELIVER POSSESSION OF THE PREMISES DESCRIBED ABOVE NOW HELD AND OCCUPIED BY YOU TO THE UNDERSIGNED UNLESS YOU ARE A TENANT OR SUBTENANT WHO RENTED THE PREMISES BEFORE THE FORECLOSURE SALE. IN THAT EVENT, YOU ARE REQUIRED TO VACATE THE PREMISES WITHIN THIRTY DAYS AFTER SERVICE OF THIS NOTICE.

This notice is intended as a Notice to Quit pursuant to California Code of Civil Procedure Section 1161a for the purpose of terminating your occupancy of the premises. This notice specifically terminates any oral/written agreement you may have with respect to the premises.

**NOTE:** If you are not one of the persons named above or you claim to be a tenant or subtenant who is entitled to remain in the premises for more than three days, YOU MUST GIVE NOTICE TO THE UNDERSIGNED WITHIN THREE DAYS OF THE DATE THIS NOTICE IS SERVED.

Dated: 1-29-08

Law Office of John E. Bouzane

A. Turner

Attorneys for the new owner:

Carrington Mortgage Services
1610 E St Andrews Pl B150
Santa Ana, CA 92705

Contact Information
707/745-2777

634 Oak Ct. San Bernardino, Ca 92410 (909) 889-5151 fax (909) 889-3900









# NOTICE OF RIGHT TO RECLAIM ABANDONED PERSONAL PROPERTY
## (Value MORE than $300.00)

TO: _Heather Good Hull_

*All former residents (tenants and subtenants) (full names)*

When you vacated the premises situated at _2313 Green Ridge Drive, Richmond_

County of _Contra Costa_ _____, California, the following personal propert

remained at the premises (see description below).

Unless you pay the reasonable cost of storage for all the below-described personal property and take possession of the property which you claim, not later than eighteen (18) days after this Notice is deposited in the mail, this personal property may be disposed of pursuant to Civil Code Section 1988.

If you fail to reclaim the property, it will be sold at a public sale after notice of the sale has been given by publication. You have the right to bid on the property at this sale. After the property is sold and the cost of storage, advertising, and sale is deducted, the remaining money will be paid over to the county. You may claim the remaining money at any time within one year after the county receives the money.

DATE OF MAILING OF THIS NOTICE: _2/5/08_

DATE OF EXPIRATION OF THIS NOTICE: _2/23/08_

You may claim this property at: _The property at 2313 Greenridge Drive Richmond CA 94803_

*(Address where property may be claimed)*

_____
Owner/Agent

THE ABANDONED PERSONAL PROPERTY IS DESCRIBED AS FOLLOWS:

_Household Items_
_Barbque Cars Trucks_

UNAUTHORIZED REPRODUCTION OF THIS FORM IS ILLEGAL

A Approved Form
ifornia Apartment Association
FORM 19.0 — Revised 1994 — Copyright 1994



# EXHIBIT 7

To who it may concern

We were assigned to manage the property at 2313 Greenridge Drive in early January , We posted notices which were ignored and remained on the property . Most recently we taped the locks with duct tape  and posted notices including and 3/30 day notice to  quit  on 1/31 at 12/30 pm.  I drove by again on 2/1 and then came back 2/2  and the notices were still there. I had a conversation with the woman who lives across the street ( a black female in her 30's) as well as my contractor had conversations  with her. We were both told that she had not seen anyone there in weeks.

My contractor called Richmond Police about an hour before I arrived and he had met with the officer I have his card somewhere if you need his name Dennis the contractor with the officer cut a fence lock and walked around the property. . When I arrived we spoke about the law the banks rights and tenants rights I called Fast eviction and spoke with the attorney there as well as other staff there and was told that if we believed that no one had been at the house and it was possible that it was abandoned we could have it re keyed.  We walked around and entered through the slider at the left rear of the property which was not locked as well as one window which was in the back of the house. I took pictures of most rooms and the contractor changed the door locks in the front. I believe the only thing I may have touched would have been the flush handle of a toilet as I had to urinate  badly and perhaps one closet door. Nothing was taken from the home. We were in the home about 2 minutes. It appeared to be a more like a strange museum than a home. There was no sign of cooking or any recent life at all. Things were stacked up like they were in storage or ready to be moved. The only sign of recent habitation was one large tennis shoe on the floor near one bed. I  have pictures of most rooms if and can send  them to you if you would like.

The attorneys office asked us to go back and inventory all the items in the house, which we were going to do the day after all this drama struck Sunday morning. We also discussed a notice with the attorney  which I prepared and posted the home the on Feb 5th.

I can give you more detail on any of this if you would like,

Paul R. Winders

I            a